Bryce STEVENSON and Sheila A. Stevenson, Appellants,

v.

BANK OF AMERICA, BAC Home Loans L.P., f/k/a Countrywide Home Loans L.P.[1], Appellee.

No. 2010–CA–002215–MR.

Court of Appeals of Kentucky.

Oct. 7, 2011.

Rehearing Denied Dec. 8, 2011.

Cases Ordered Published by Court of Appeals Feb. 3, 2012.

1. Pursuant to the policy of this Court, the style of the case is taken from the Notice of Appeal. Here, the Notice of Appeal listed the Appellee as "BANK OF AMERICA, BAC HOME LOANS L.P. fka, COUNTRYWIDE HOME LOANS L.P." However, the plaintiff below was actually BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loan Servicing, L.P. c/o Bank of America/Countrywide. We note this distinction solely for the sake of clarity.

Joseph E. Blandford, Jr., Louisville, KY, for appellant.

Nicholas D. Donnermeyer, Cincinnati, OH, for appellee.

Before CAPERTON, NICKELL and WINE, Judges.

2. Kentucky Revised Statutes.

## OPINION

NICKELL, Judge:

Bryce Stevenson and Sheila A. Stevenson (collectively "Stevenson") have appealed from the Jefferson Circuit Court's entry of summary judgment in favor of BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing, L.P. ("BAC") in this mortgage foreclosure action. The sole issue presented for adjudication is whether BAC was the real party in interest and thereby had standing to bring the action. After a careful review of the record, the briefs and the law, we conclude BAC did have standing and affirm the trial court's judgment.

On February 8, 2008, Stevenson executed a note in favor of Taylor, Bean and Whitaker Mortgage Corp. ("TBW") in the amount of $139,308.00. The note was secured by a mortgage on a home being purchased by Stevenson. The mortgage was duly recorded in the Jefferson County Court Clerk's Office. TBW subsequently endorsed the note "in blank," thus, it became a bearer paper under KRS [2] 355.3–109. In August 2009 BAC acquired rights in and to the note and mortgage. An assignment of mortgage dated November 10, 2009, was recorded on November 12, 2009. The assignment recited the date of transfer as November 5, 2009.

Stevenson defaulted on the payments for the mortgage loan in February 2009 and failed to make further payments. On November 6, 2009, BAC filed the instant foreclosure action. On November 19, 2009, Stevenson, acting pro se, answered the complaint but did not deny the allegations of the complaint. Rather, Stevenson questioned whether BAC was the real party in interest with standing to enforce the note and mortgage through a foreclosure action. Contemporaneous with the filing of the

answer, Stevenson filed a lengthy request for production of documents and request for admissions,[3] and a motion "for counsel to submit proof of authority to represent BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing L.P."[4] In response, BAC moved the trial court to enter a protective order alleging the propounded discovery requests failed to conform to the Kentucky Rules of Civil Procedure (CR). The court granted BAC's request.

During a status conference on January 14, 2010, the trial court informed BAC it was concerned about the method of service effected on Sheila A. Stevenson and ordered BAC to cure the deficiency.[5] The trial court further orally required BAC to supplement the record with copies of the note and other documents necessary to verify it was, in fact, the real party in interest. On February 11, 2010, BAC filed a document captioned "Supplemental Complaint," with copies of the note, mortgage, and assignment of mortgage attached. Stevenson filed an answer to the supplemental complaint, again alleging BAC was not the real party in interest, and that the documents produced were insufficient since they were not "original wet ink paper." Stevenson did not contest the filing of the supplemental complaint.

Stevenson moved to dismiss the action based primarily upon the continuing belief that BAC was not the real party in interest. BAC responded and again attached copies of the note, mortgage and assignment to its pleading. The matter was referred to the Master Commissioner and BAC was ordered to produce the original note for inspection at a hearing. Following that hearing, the Master Commissioner recommended denying Stevenson's motion to dismiss and found BAC had provided sufficient proof that it was the real party in interest and was entitled to prosecute the action.

On July 22, 2010, BAC moved for summary judgment which Stevenson opposed. Stevenson then filed a series of bizarre documents filled with generally incoherent and untenable legal arguments which attempted to show that no obligation to repay the loan existed and that, in fact, Stevenson was the secured and injured party.[6] Stevenson requested the case be dismissed, or, alternatively, that the sum-

3. Stevenson propounded over 180 requests for production of documents and over 120 requests for admission.

4. Throughout the litigation below, Stevenson filed lengthy documents strewn with unsupported and generally incoherent legal arguments. The trial court's numerous admonitions regarding its inability to comprehend the points Stevenson was proffering did little to neither stem the tide of the filings nor improve their quality or understandability. Stevenson consistently rejected the court's suggestion that he retain counsel.

5. BAC subsequently obtained proper service of process on Mrs. Stevenson who, like her husband, appeared *pro se*.

6. These filings were based closely on the "vapor money" and "redemption movement" theories which have been roundly rejected by courts across the nation. The "vapor money" (or "no money lent") theory posits that Congress has never given banks the authority to extend credit and, thus, banks act beyond their charters when making loans. Proponents claim banks create money "out of thin air," through ledger entries and bookkeeping tricks, by "depositing" a borrower's promissory note without the borrower's permission, listing the note as an "asset" on the bank's ledger entries, and then lending a borrower back his own "money." Since banks do not have enough "real money in their vaults" to cover the sums lent, loans are not backed by actual money—the only real money is gold or silver; paper money is worthless since it is created by an illegitimate Federal Reserve—making them invalid *ab initio* and creating no obligation for repayment. According to the "redemption movement," when the U.S. Gov-

mary judgment be denied and the matter be allowed to proceed to a jury trial. Stevenson further moved the trial court for sanctions against BAC for the "unauthorized use of Defendants copywrited [sic] names for financial gain. This is a $500,000.00 Five Hundred Thousand Dollar fine plus triple damages for each violation and infringement. Thus fair warning and public record."

On October 20, 2010, the trial court granted BAC's motion for summary judgment and entered a final judgment and order of sale. Stevenson continued to file unusual documents[7] seeking relief from the final judgment. No further orders were entered by the trial court. This appeal followed.

As stated earlier, the sole issue presented in this appeal for adjudication is whether BAC is the real party in interest under CR 17.01. Stevenson argues it is not and, thus, did not have standing to bring the foreclosure action. We disagree.

CR 17.01 provides that "every action shall be prosecuted in the name of the real party in interest, but . . . an assignee for the benefit of creditors . . . may bring an action. . . ." "We think every one [sic] would agree that ordinarily the real party in interest is the person who is the beneficial owner of the cause of action sought to be prosecuted. Where the cause of action is assignable, and the entire cause has been assigned, clearly the assignee has become the owner of the cause and he is the real party in interest." *Louisville & N. R. Co. v. Mack Mfg. Corp.*, 269 S.W.2d 707, 709 (Ky.1954) (citing *Works v. Winkle*, 314 Ky. 91, 234 S.W.2d 312 (1950); *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949)).

Stevenson contends BAC did not have standing because the assignment of mortgage was not filed until *after* the initiating complaint. Thus, Stevenson believes BAC merely had an expectancy of an interest when it filed the complaint. In support of this position, Stevenson cites and relies solely upon an unpublished opinion of this Court, contending "no published opinion addresses the issues in this appeal as well as [the unpublished case] as the issues are identical to those considered by [that] court." Stevenson's reliance on the unpublished opinion of this Court is misplaced and overlooks the substantial body of jurisprudence related to standing under CR 17.01.

KRS 355.1–201(2)(u)(1) defines a "holder" as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]" The record reflects TBW endorsed the note in blank, transforming it into a bearer paper pursuant to KRS 355.3–109, and that BAC obtained rights to the note and the accom-

ernment abandoned the gold standard it devised a scheme to enable it to borrow money. Adherents to this theory assert that the government first sets up fictitious accounts—in the initial amount of $630,000.00—for each person at birth, and then pledges the "straw man of its citizens" as collateral for the national debt. Through a series of obscure procedures derived from the Uniform Commercial Code, citizens can allegedly gain access to these "secret accounts" and write "sight drafts" to utilize those funds for their own purposes. Some believe the secret accounts are virtually bottomless, meaning those who truly understand and comply with the required filings must never actually pay for anything.

7. These documents included an affidavit of surety in favor of the United States of America, allegedly pledging the subject real estate as collateral for an unspecified performance bond, and a self-executed "Release of Lien on Real Property" and self-executed "Release of Personal Property from Escrow," wherein Stevenson held himself out as "a duly authorized representative of the United States government as a warranted contracting officer."

panying mortgage in August of 2009. BAC asserted that it was the holder of the note and was in possession of the original note. In support of its position, although it had previously produced exact copies of the documents, BAC produced the original note and mortgage before the Master Commissioner and Stevenson was permitted to inspect the documents. BAC noted that the assignment of mortgage was executed solely for the purpose of memorializing the transaction and updating the public records. The Master Commissioner was satisfied that BAC was, in fact, the holder of the note and entitled to maintain the instant action as the real party in interest.

Contrary to Stevenson's contention, the assignment of mortgage was not the document which transferred enforcement rights on the note to BAC, and the date of its execution is immaterial to the case at bar.[8] Pursuant to KRS 355.3–201(2), "negotiation" means "a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder. . . . If an instrument is payable by bearer, it may be negotiated by transfer of possession alone." Stevenson fails to comprehend that when the note was endorsed in blank it became a bearer instrument and no assignment was necessarily required to transfer the right to collect and enforce the note. Mere possession of the original note was sufficient. Because BAC was lawfully in possession of the original note, clearly it was entitled to enforce the obligations secured thereby and was the real party in interest in the litigation below. Any argument to the contrary is wholly without merit. The trial court did not err.

 Finally, we feel it necessary to comment on Stevenson's contention that BAC did not request leave of court to file its "Supplemental Complaint," such a pleading is not authorized by the civil rules, and the filing was not pursuant to an order of the trial court, all of which render the additional pleading invalid and of no effect. Contrary to Stevenson's allegation, at a hearing on January 14, 2010, the trial court specifically stated from the bench that BAC needed to supplement the record with copies of the note, any assignments thereof, and any other documentation purporting to show BAC was the holder of Stevenson's note. Although possibly improperly styled, BAC's filing was clearly intended to comply with the trial court's mandate that it supplement the record with the necessary information verifying its ability to prosecute the action. Stevenson's contention to the contrary simply mischaracterizes the trial court's explicit directives.

After carefully reviewing the record, we perceive no error in the proceedings below. Thus, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

---

8. Even were we to believe the assignment of mortgage was the instrument which transferred the right to enforce the note, the assignment at issue here recites that the rights to the Stevensons' mortgage were transferred to BAC *prior* to the filing of the instant complaint, even though the writing memorializing the transaction was not executed and recorded until *after* the filing. It is clear that BAC had a "significant interest" in the action at the time it was filed, *Kentucky Center for the Arts v. Whittenberg Eng. & Constr. Co.,* 746 S.W.2d 71 (Ky.App.1987), and would still be considered the real party in interest based on the assignment of mortgage tendered below. We are wholly unpersuaded by Stevenson's bald and unsupported contention that the assignment of mortgage was "invalid as a matter of law and BAC acted without authority."