Kenneth A. BRUNER, Appellant,

v.

DISCOVER BANK c/o DFS Services, LLC, Appellee.

No. 2011–CA–000197–MR.

Court of Appeals of Kentucky.

Jan. 20, 2012.

Kenneth A. Bruner, Jr., Louisville, KY, pro se.

James T. Hart, Cincinnati, OH, for appellee.

Before MOORE, NICKELL, and THOMPSON, Judges.

## OPINION

MOORE, Judge:

On May 4, 2009, DFS Services, LLC, filed this collection action in Jefferson Circuit Court against Kenneth A. Bruner, naming itself "Discover Bank" in its complaint and thereafter referring to itself as "Discover Bank c/o DFS Services, LLC" in all of its subsequent pleadings. In substance, DFS's complaint alleged that Bruner owed Discover Bank a credit card debt of $9,464.82, had defaulted upon that debt, and that Discover Bank was due 19.8% interest on that debt from Bruner pursuant to the terms of a cardmember agreement between Discover Bank and Bruner.[1] In part, Bruner responded by asserting that DFS had no standing to sue as a real party in interest, per Civil Rule (CR) 17.01.[2] Bruner also requested, approximately 17 months subsequent to when DFS filed its complaint, that the court order this matter submitted to arbitration pursuant to the terms of the cardmember agreement.[3]

After a period of motion practice, DFS moved for summary judgment. In its order granting DFS summary judgment, the circuit court noted that Bruner had raised the issue of DFS's standing to sue as a real party in interest. Nonetheless, the circuit court held that the evidence of record conclusively established that "Discover Bank is the owner of the subject debt and the real party in interest," and that "Mr.

---

1. DFS alleged that Bruner entered the cardmember agreement with Discover Bank in 2004. Yet, the cardmember agreement DFS attached as an exhibit to its complaint, to which DFS alleges Bruner agreed in 2004, has a copyright date of 2008.

2. Bruner alleged several other defenses below. But, having resolved this matter for the time being on the grounds of CR 17.01, any discussion of Bruner's other defenses would be inappropriately advisory.

3. In somewhat contradictory fashion, Bruner disavowed entering any agreement with Discover Bank. But, he sought arbitration on the basis of the arbitration clause contained in the cardmember agreement produced by DFS, as well as a substantially similar cardmember agreement he produced in his own pleadings.

Bruner is liable to Discover Bank for the claimed debt." In the same order, the circuit court also denied Bruner's request to arbitrate. Thereafter, Bruner appealed. After careful review, we vacate and remand.

■ A preliminary issue raised by DFS is whether Bruner's appeal should be dismissed either on the basis of CR 73.02(1)(a) or CR 73.03(1). By way of review, CR 73.02(1)(a) provides that "[t]he notice of appeal shall be filed within 30 days after the date of notation of service of the judgment or order...." In its argument relating to this Civil Rule, DFS points out that the final order in this matter is dated November 19, 2010, and that Bruner filed his notice of appeal on January 27, 2011. Therefore, DFS reasons that Bruner filed an untimely notice of appeal and, thus, failed to properly invoke the jurisdiction of this Court.

However, DFS overlooks that Bruner filed a timely CR 59.05 motion to vacate the November 19, 2010 order, thereby rendering the November 19, 2010 order interlocutory for purposes of filing an appeal until the circuit court overruled his motion on December 28, 2010. *Kentucky Farm Bureau Ins. Co. v. Gearhart,* 853 S.W.2d 907, 910 (Ky.App.1993). Because January 27, 2011, is within 30 days of December 28, 2010, DFS's argument lacks merit.

■ Next, CR 73.03(1) provides that "[t]he notice of appeal shall ... identify the judgment, order or part thereof appealed from." As it relates to this Civil Rule, DFS points out that Bruner's notice of appeal actually lists the circuit court's order of December 28, 2010 (which overruled his CR 59.05 motion), rather than the circuit court's order of November 19, 2010. DFS cites *McFerran v. Postal Service, Inc.,* 402 S.W.2d 83, 84 (Ky.1966), for the proposition that an order overruling a CR 59.05 motion to vacate judgment is not

appealable; that CR 73.03 requires strict compliance; and that failure to strictly comply with that rule warrants the dismissal of an appeal. Accordingly, DFS argues that Bruner's appeal should be dismissed on this basis as well.

However, since 1986, Kentucky has adopted a policy of substantial compliance rather than strict compliance regarding precisely this issue. *See, e.g., Ready v. Jamison,* 705 S.W.2d 479 (Ky.1986). And, because the judgment appealed from (*i.e.,* the November 19, 2010 judgment) is obvious to this Court, and DFS has demonstrated no substantial harm or prejudice, our policy of substantial compliance dictates that dismissing Bruner's appeal on this basis would also be inappropriate. *See id.* at 481–82.

■ A preliminary issue raised by Bruner is the matter of the identity, interest, and standing of DFS, the sole party prosecuting this action against him; his confusion owes largely to the fact that DFS initially referred to itself as "Discover Bank" in its complaint, and then changed its name in all subsequent pleadings to "Discover Bank c/o DFS Services, LLC."

Regarding its identity, "DFS Services, LLC" is not "Discover Bank"; rather, the cardmember agreement attached to its pleadings lists DFS as an "affiliate" of Discover Bank. In turn, "c/o" is the abbreviation for "care of." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 236 (11th ed.2003). "Care of," used in a legal sense, denotes a disclosed agency relationship. *See, e.g., CSX Transp. Co. v. Novolog Bucks County,* 502 F.3d 247, 258 (3rd Cir.2007). And, in its appellate brief, DFS represents that it is Discover Bank's agent in this matter; to this effect, DFS states that "[t]his action was brought by Discover [Bank], care of its servicing subsidiary DFS Services,

LLC, to recover the debt owed to Discover [Bank]."

■■■ As an aside, a subsidiary company's identity and legal existence is independent from that of its parent. *Square D Co. v. Kentucky Bd. of Tax Appeals,* 415 S.W.2d 594, 601 (Ky.1967). It necessarily follows that a subsidiary has no inherent ownership interest of, nor inherent right to collect upon, an obligation that is owed solely to and owned solely by its parent. Moreover, even if a subsidiary were to act as its parent's agent, an agent usually has no implied power to institute legal proceedings on behalf of its principal even with respect to the subject matter of its agency. *See* 3 Am.Jur.2d Agency § 95.

That said, nothing prohibits one company from specifically designating another as its agent for the purpose of collecting a debt and instituting legal proceedings on its behalf. *Id.* Such an agent is often referred to as a "servicer," and the nature of such an agency, along with the matter of a purported servicing agent's standing to bring a collection action against a debtor in the context of a credit card or foreclosure action, was previously discussed in *Green Tree Servicing LLC v. Sanders,* No. 2005–CA–000371–MR, 2006 WL 2033668 (Ky. App. July 21, 2006).[4] There, a panel of this Court turned to federal bankruptcy precedent for guidance:

> Although asserted in the context of a bankruptcy case, the question of the servicer's standing to assert proofs of claims on behalf of a credit card issuer was resolved in *Greer v. O'Dell* [, 305 F.3d 1297 (11th Cir.2002) ]. The loan servicer was determined to be the real party in interest to "conduct through licensed counsel, the legal affairs of the investor relating to the debt that it ser-

vices." [*Id.*] Pursuant to the agreement between the creditor and the servicer, the servicer had the obligation to collect the payment with respect to the pending claims and because it was entitled to a fee for the amounts collected, had a sufficient economic interest in the bankruptcy proceeding. [*Id.* at 1303.]

*Id.* at *3 (internal footnotes omitted).

The *Green Tree* Court then examined a "pooling and servicing agreement" of record made between the trust that owned the loan obligation at issue in that matter and the trust's servicing agent. Holding that the pooling and servicing agreement and other evidence of record established a relationship analogous to the one at issue in *Greer, i.e.,* providing the servicing agent standing to sue in its own name per CR 17.01, the Court explained:

> The pooling and servicing agreement was made for the benefit of the trust and specifically permits [the servicing agent] to enforce the loan obligations without joining the trust. We agree with those courts that have held such a contract enforceable and that by its terms, the right to bring the foreclosure action is conferred on the loan servicer. [The servicing agent] is a real party in interest. Under the terms of the pooling and servicing agreement, once the foreclosure action was commenced, the loan was automatically assigned to [the servicing agent]. Thus, for the purpose of enforcing the loan obligation, [the servicing agent] became the holder and owner of the note and mortgage.

*Id.*

The common thread between *Green Tree* and *Greer,* however, is that the purported servicing agents acting as creditors/plain-

---

4. We find *Green Tree* to be persuasive authority in this case and proper to cite as it fulfills the criteria of Civil Rule (CR) 76.28(4).

tiffs in those cases provided evidence demonstrating either that they had either been 1) specifically authorized by the debt-owning entity to initiate and prosecute the legal action; or 2) assigned the debt in question, at least for purposes of collection. *See, e.g., In re Jacobson*, 402 B.R. 359, 367 (Bankr.W.D.Wash.2009) ("Foreclosure agents and servicers do not automatically have standing ... and must show authority to act for the party which does." (internal citations omitted)); *see also*, CR 17.01 ("Every action shall be prosecuted in the name of the real party in interest, but ... an assignee for the benefit of creditors ... may bring an action without joining the party or parties for whose benefit it is prosecuted."); *In re O'Dell*, 268 B.R. 607 (Bankr.N.D.Ala.2001) (holding purported servicing agent that was either an owner-assignee of a debtor's credit card account, or an agent of a credit card company and specifically authorized to protect the credit card company's interests, qualified as a "real party in interest" with standing, per Federal Rule of Civil Procedure 17(a), to file proofs of claim on credit card company's behalf, to file objections to Chapter 13 proceedings, and to file motion for permission to pursue remedies against non-filing co-debtor).

 Indeed, the first of three elements that a plaintiff must prove in a debt collection matter in Kentucky—before summary judgment may be entered in that plaintiff's favor—is ownership or an assignment of the debt sought to be collected upon, or authority from the owner to collect the debt in question. *See, e.g., Bull-* ock v. Worldwide Asset Purchasing, LLC, No. 2006–CA–001757–MR, 2008 WL 3159921 at *3 (Ky.App. Aug. 8, 2008, as modified Sept. 5, 2008).[5] In *Bullock*, the Court opined that the three showings that a plaintiff/creditor must provide are (1) a bill of sale listing the name and account number of the defendant; (2) a document specifically detailing how the creditor/plaintiff reached the principal and interest amounts that it is suing for; and (3) documentary evidence that the defendant is in fact the person responsible for the debt. Regarding the first of these elements, an assignment from the demonstrated owner of the debt for the purpose of collection or the demonstrated owner's specific authorization to its agent to collect the debt on its behalf through legal proceedings, serve virtually the same purpose as a bill of sale.

Here, DFS asserts that it has standing to sue in this matter on behalf of Discover Bank, but it relies exclusively upon its pleadings to support this statement. Pleadings are not evidence. *Educational Training Systems, Inc. v. Monroe Guar. Ins. Co.*, 129 S.W.3d 850, 853 (Ky.App. 2003). DFS has produced no evidence of an assignment from Discover Bank of Bruner's purported debt, and nothing of record demonstrates DFS's authority to otherwise act in this matter on behalf of Discover Bank.[6] In short, it is impossible for this Court, based upon this record, to assess whether DFS has standing in this matter as a real party in interest per CR 17.01.

---

**5.** We find *Bullock* to be persuasive authority in this case, consistent with Kentucky law, and proper to cite as it fulfills the criteria of Civil Rule (CR) 76.28(4).

**6.** DFS did introduce an affidavit from its employee, Stephen Ball, which similarly averred that DFS was Discover Bank's servicing agent. However, Ball's affidavit fails to define the scope and nature of DFS's authority to act in this matter. Likewise, assuming there is a written agreement between DFS and Discover Bank specifically delineating DFS's authority to act in this matter, a sworn and certified copy of that agreement must accompany any affidavit referencing it. *See* CR 56.05.

Consequently, we VACATE the respective orders of the Jefferson Circuit Court, and REMAND this matter for further proceedings relative to the issue of DFS's standing as a real party in interest in this matter, and for any other proceedings not inconsistent with this opinion.

ALL CONCUR.