# FOR PUBLICATION



APPELLANT PRO SE:

**DERIK A. BLOCKER**
Merrillville, Indiana

ATTORNEY FOR APPELLEE:

**PHILLIP A. NORMAN**
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DERIK A. BLOCKER and TAMMI BLOCKER, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1211-MF-479 |
| | ) | |
| U.S. BANK NATIONAL ASSOCIATION as | ) | |
| TRUSTEE for the CERTIFICATEHOLDERS | ) | |
| CITIGROUP MORTGAGE LOAN TRUST INC. | ) | |
| ASSET-BACKED PASS-THROUGH | ) | |
| CERTIFICATE SERIES 2007-AHL3, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable William E. Davis, Judge
Cause No. 45D05-1112-MF-434

**August 19, 2013**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Derik and Tammi Blocker appeal the trial court's summary judgment and decree of foreclosure entered in favor of U.S. Bank National Association as Trustee for the Certificateholders Citigroup Mortgage Loan Trust Inc. Asset-Backed Pass-Through Certificates Series 2007-AHL3 ("U.S. Bank"). We affirm.

**Issue**

The restated issue before us is whether there are any genuine issues of material fact that would preclude the entry of a decree of foreclosure in favor of U.S. Bank.

**Facts**

On February 26, 2007, the Blockers signed a promissory note for $162,350.00 with Accredited Home Lenders, Inc., ("Accredited") to finance the purchase of their home in Merrillville, and also executed a mortgage with Accredited to secure payment of the loan. Accredited's nominee, Mortgage Electronic Registration Systems, Inc., ("MERS") later assigned the mortgage to U.S. Bank. There are two such assignments in the record, one that was recorded on October 13, 2011, and one that was recorded on December 9, 2011.

The Blockers stopped paying the loan beginning with the monthly payment due in June 2011, when the principal balance was $157,473.83. U.S. Bank initiated foreclosure proceedings on December 30, 2011. On February 27, 2012, a Marcus Lenton, Jr., of

2

Chicago sent a personal, non-certified check for $180,000.00 to U.S. Bank on behalf of the Blockers to pay off their loan. The Blockers had previously named Lenton as their attorney-in-fact; the Blockers never hired an attorney-at-law to represent them. On the back of the check in the endorsement box, Lenton had written, "NOT FOR DEPOSIT EFT ONLY!!!" App. p. 123. U.S. Bank did not attempt to cash this check. It subsequently informed the Blockers that their debt could be paid off only via certified funds, such as a money order, cashier's check, or wire transfer.

The parties held a settlement conference on April 27, 2012. At this conference, the Blockers apparently presented U.S. Bank's representatives with documents prepared by Lenton, which the Blockers contend represented a "payment instrument to discharge the alleged debt . . . ." Id. at 76. These documents included a "Lawful Order for Money" directed to the United States Treasury Department requesting a "Charge to the Drawee's [Lenton's] Account the Value of the SUM CERTAIN AMOUNT OF: $200,000." Id. at 86. A separate letter from Lenton to the Secretary of the Treasury stated that the $200,000 was, "[a]s you know, . . . a public debt obligation of the United States." Id. at 84. Lenton had also prepared a "UCC Financing Statement" requesting that U.S. Bank assign and release their interest in the Blockers' home in exchange for Lenton's "INTERNATIONAL BILL OF EXCHANGE" in the amount of $200,000.00. Id. at 83. U.S. Bank did not accept these documents as payment for the Blockers' indebtedness.

On July 24, 2012, U.S. Bank filed a motion for summary judgment. On August 1, 2012, the Blockers filed a response. On that same day, the Blockers presented a

3

document to U.S. Bank that was labeled an "International Promissory Note (UNCITRAL Convention)," written for the amount of $200,000.00.  Id. at 98.  The document was not written against any bank account; instead, it was written against the "Marcus J. Lenton Jr Trust" as drawee and Lenton himself as drawer.  Id.  U.S. Bank refused to accept this document as payment for the Blockers' indebtedness.

The trial court scheduled a hearing for October 11, 2012.  On September 14, 2012, the Blockers served interrogatories and a request for production of documents upon U.S. Bank and demanded a response by October 11, 2012.  U.S. Bank did not respond to either document, and the trial court held the summary judgment hearing as scheduled.  On October 16, 2012, the trial court granted summary judgment and entered a decree of foreclosure in favor of U.S. Bank.  The Blockers now appeal pro se.

**Analysis**

We will affirm a trial court's grant of summary judgment only if no genuine issues of material facts exist and the movant is entitled to judgment as a matter of law.  Reed v. Reid, 980 N.E.2d 277, 303 (Ind. 2012) (citing Ind. Trial Rule 56(C)).  Any doubts concerning the existence of a genuine issue of material fact must be resolved in favor of the nonmoving party and result in reversal of summary judgment.  Id.  "A fact is material for summary judgment purposes if its resolution is decisive of either the action or a relevant secondary issue."  Id.  U.S. Bank argues that it is undisputed the Blockers had stopped paying on the promissory note and that U.S. Bank was entitled to foreclose on the mortgage because of that failure.

4

The bulk of the Blockers' brief is dedicated to arguing that they in fact made no fewer than three tenders of payment to U.S. Bank through their attorney-in-fact Lenton prior to the granting of summary judgment, any one of which should have discharged their mortgage debt. The Blockers' argument goes awry by focusing on the three "payment" attempts by Lenton. It seems readily apparent that those attempts were not done through normal banking channels. Instead, although the documents in the record and arguments by the Blockers are somewhat confusing, it appears that Lenton requested that the United States Treasury Department pay off the Blockers' mortgage for them.

Rather than risk improperly paraphrasing the Blockers' arguments, they state in part:

> Derik A. Blocker and his Attorney-in-Fact may issue Negotiable Instruments against the obligations of the United States because Derik A. Blocker is one whose private property is at risk to collateralize the government's debt and currency.

> Therefore, by legal definitions, Derik A. Blocker and his Attorney-in-Fact are part of a "national banking association" the members of which may issue Negotiable Instruments against these obligations of the UNITED STATES, to that part of the public debt due them as Principals and Sureties.

* * * * *

> Therefore, the legal definitions relating to "legal tender" have been written by Congress to provide for the inclusion of those Negotiable Instruments issued by those private principals and creditors of the U.S. against the obligation of the United States for recovery on their (and the Blocker's) private assets and property that have been and are

5

still being used to collateralize the obligations of the United States.

> This has been the case since 1933, when, in the wake of the U.S. bankruptcy, Congress passed House Joint Resolution 192, now Public Law 73-10, and codified at Title 31 § 5118. Since that time, these creditors have collectively and nationally constituted a legal class of persons recognized as being a 'national banking association' with the right to issue such notes against the obligation of THE UNITED STATES for equity interest recovery due and accrued to these Principals and Sureties of the United States.

Appellants' Br. pp. 8-9.

U.S. Bank has not favored us with a direct response to the Blockers' lengthy arguments on this point, other than to say that Lenton's tendered payment offers were not "valid." Appellee's Br. p. 5. It appears that the Blockers' arguments are an outgrowth of the so-called "Redemptionist Movement," although they never use that phrase in their brief.[1] The theory behind that movement has been explained in part as follows:

> [T]he "Redemptionist" theory . . . propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 1933, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free.

---

[1] Although there is no information about the "Redemptionist Movement" in the briefs or trial record, we are permitted to refer to factual information outside the record, based upon published sources we have discovered that we cite with specificity, in order to provide the background information essential to a thorough and fair consideration of a case. See Citimortgage, Inc. v. Barabas, 975 N.E.2d 805, 808 n.1 (Ind. 2012).

McLaughlin v. CitiMortgage, Inc., 726 F. Supp. 2d 201, 209 (D. Conn. 2010) (quoting

Monroe v. Beard, 536 F.3d 198, 203 n. 4 (3d Cir. 2008), cert. denied).

Another court has observed:

> Adherents to this theory assert that the government first sets up fictitious accounts—in the initial amount of $630,000.00—for each person at birth, and then pledges the "straw man of its citizens" as collateral for the national debt. Through a series of obscure procedures derived from the Uniform Commercial Code, citizens can allegedly gain access to these "secret accounts" and write "sight drafts" to utilize those funds for their own purposes. Some believe the secret accounts are virtually bottomless, meaning those who truly understand and comply with the required filings must never actually pay for anything.

Stevenson v. Bank of America, 359 S.W.3d 466, 469 n.6 (Ky. Ct. App. 2011).

Closely related to the "redemption" theory is the "vapor money" theory, which

also seems to play a role in the Blockers' arguments:

> The "vapor money" (or "no money lent") theory posits that Congress has never given banks the authority to extend credit and, thus, banks act beyond their charters when making loans. Proponents claim banks create money "out of thin air," through ledger entries and bookkeeping tricks, by "depositing" a borrower's promissory note without the borrower's permission, listing the note as an "asset" on the bank's ledger entries, and then lending a borrower back his own "money." Since banks do not have enough "real money in their vaults" to cover the sums lent, loans are not backed by actual money—the only real money is gold or silver; paper money is worthless since it is created by an illegitimate Federal Reserve—making them invalid ab initio and creating no obligation for repayment.

7

Id. Both the "vapor money" and "redemption" theories have been "roundly rejected by courts across the nation." Id.

In sum, Lenton's attempts to pay off the Blockers' mortgage debt were not only unorthodox but also legally unacceptable. It is unclear who Lenton is or what his relationship to the Blockers is and whether he represented to them that he knew the "secret formula" to accessing money locked away in a clandestine Treasury Department account but, in any event, he clearly failed to access or provide the funds needed to pay off their mortgage. The trial court did not err in refusing to countenance these purported attempts to discharge the Blockers' debt.

The Blockers also briefly argue that the assignment of the mortgage to U.S. Bank "appears to be fraudulent." Appellants' Br. p. 14. They seem to base this argument on the fact that there are two different assignments from MERS to U.S. Bank in the record. Indeed, it is unclear why there are two different assignments. Nonetheless, we do not believe this gives rise to any reasonable inference of fraud. Either of the assignments would be sufficient to establish U.S. Bank as the proper party to foreclose the mortgage and any suggestion to the contrary would be based on mere conjecture or speculation, which is insufficient to create genuine issues of material fact and defeat a motion for summary judgment. See City of Evansville v. U.S. Fidelity & Guar. Co., 965 N.E.2d 92, 102 (Ind. Ct. App. 2012), trans. denied.

Additionally, the Blockers do not argue that MERS lacked authority to assign the mortgage on behalf of Accredited to U.S. Bank. There was also uncontradicted evidence

8

that U.S. Bank was the current holder of the original promissory note and, therefore, it was entitled to enforce the note. See Ind. Code § 26-1-3.1-301. Thus, the trial court properly concluded that U.S. Bank was the proper party to enforce the note and foreclose the mortgage.

The Blockers also contend that their procedural due process rights were violated when U.S. Bank failed to respond to their interrogatories and request for production of documents before the trial court issued its summary judgment ruling. They cite no authority, however, for the proposition that an opposing party's failure to respond to a discovery request in a civil case amounts to a due process violation. We also observe that the Blockers did not file a motion to compel discovery under Indiana Trial Rule 37; parties surely cannot claim a due process violation related to failure to cooperate with discovery when they have not used the intended procedures to compel discovery. In any event, we also observe that the Blockers gave U.S. Bank less than thirty days to answer the interrogatories and produce the documents. Both Trial Rules 33 and 34, governing interrogatories and motions to produce documents, give an opposing party thirty days to respond to them, and the Blockers did not ask the trial court to shorten this time period. Finally, the Blockers never sought to continue the summary judgment hearing so that they could obtain the evidence requested in their discovery motions. We cannot perceive how the Blockers' due process rights were violated by U.S. Bank's failure to answer the interrogatories or produce the requested documents.

9

Finally, we acknowledge that the Blockers contend several times that the trial court lacked subject matter jurisdiction. "Subject matter jurisdiction exists when the Indiana Constitution or a statute grants the court the power to hear and decide cases of the general class to which any particular proceeding belongs." R.L. Turner Corp. v. Town of Brownsburg, 963 N.E.2d 453, 457 (Ind. 2012). The trial court in this case was a division of the Lake Superior Court, which is a court of general jurisdiction. See Kozlowski v. Dordieski, 849 N.E.2d 535, 537 (Ind. 2006). It is clear the trial court had subject matter jurisdiction to enter a decree of foreclosure. To the extent the Blockers make other arguments attacking the trial court's jurisdiction or the propriety of its judgment that we have not explicitly addressed, it suffices to say that those arguments lack cogency and we will not address them further. See A.J. v. Logansport State Hosp., 956 N.E.2d 96, 109 (Ind. Ct. App. 2011) (noting that under Indiana Appellate Rule 46(A)(8)(a), lack of cogent reasoning waives an argument for appellate review).

**Conclusion**

There are no genuine issues of fact that would preclude the entry of summary judgment and a decree of foreclosure in favor of U.S. Bank against the Blockers. We affirm.

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.