RENDERED:  SEPTEMBER 1, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

**ORDERED PUBLISHED BY SUPREME COURT:  MARCH 8, 2024
(FILE NO. 2023-SC-0456-D)**

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1370-MR

JERRY KEY AND MIRANDA KEY                              APPELLANTS


APPEAL FROM JEFFERSON CIRCUIT COURT
v.             HONORABLE ANNIE O'CONNELL, JUDGE
ACTION NO. 14-CI-402274


CITIMORTGAGE, INC.; CAPITAL
ONE BANK (USA), NA; KENTUCKY
DEPARTMENT OF REVENUE,
COMMONWEALTH OF KENTUCKY;
KENTUCKY TELCO FEDERAL
CREDIT UNION; AND MONEY
NOW, KENTUCKY, INC.                                         APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND CETRULO, JUDGES.

CALDWELL, JUDGE:  Jerry and Miranda Key ("the Keys") challenge the trial court's granting a protective order and summary judgment in favor of Appellee CitiMortgage, Inc. ("CitiMortgage") in a foreclosure action.  We affirm.

**FACTS**

In late 2008, the Keys obtained a mortgage loan.  Jerry Key signed a note promising to repay the lending bank $140,000 plus interest.  The Keys executed a mortgage on their residence on Red Cedar Way in Louisville to secure the note.  The Keys made monthly payments for a while.  But there appears to be no dispute that they stopped making payments on or around August 1, 2012.

In November 2014, CitiMortgage filed a complaint for foreclosure. CitiMortgage asserted it was the holder of the note and had been assigned the mortgage by the lending bank.  It attached to the complaint copies of the mortgage and a mortgage assignment from the lending bank to CitiMortgage notarized in May 2014.

It also attached to the complaint a copy of the note with an allonge.[1] The allonge stated the $140,000 principal balance, identified Jerry Key as the borrower and listed the property address.[2]  The first indorsement was signed by a

---

[1] An *allonge* is: "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." *Allonge*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[2] *Compare Acuff v. Wells Fargo Bank, N.A.*, 460 S.W.3d 335, 340 (Ky. App. 2014) ("[T]he blank endorsement on the note is contained on a separate page, not numbered in correspondence to the

lending bank official directing that payment be made to the order of CitiMortgage. The second indorsement was signed by a CitiMortgage official and stated: "pay to the order of _____ without recourse on us CitiMortgage, Inc." In other words, the second indorsement was in blank.[3]

The complaint noted the Keys had obtained a Chapter 7 discharge in bankruptcy court. A copy of an October 2014 bankruptcy court's order discharging the Keys' debts was attached.

CitiMortgage stated in the complaint that it was not seeking a "money debt" against the Keys.[4] It also stated it sought judgment for $114,186.00 in principal due plus interest since August 1, 2012, and other fees under the note in its prayer for relief. But the prayer for relief also asserted that if the Keys had been discharged in bankruptcy, CitiMortgage did not seek a "personal money judgment" but only an *in rem* judgment.[5]

---

note itself, and contains no identifying information that establishes that it is indeed related to the note.").

[3] A *blank indorsement* is: "An indorsement that names no specific payee, thus making the instrument payable to the bearer and negotiable by delivery only." *Indorsement*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[4] No recordings of any trial court hearings were included in the record on appeal as reflected in the circuit clerk's certification of the record. Thus, we have been unable to review any oral discussions of any matters in trial court hearings.

[5] An *in rem judgment* or a *judgment in rem* is: "A judgment that determines the status or condition of property and that operates directly on the property itself. • The phrase denotes a judgment that affects not only interests in a thing but also all persons' interest in the thing." *Judgment*, BLACK'S LAW DICTIONARY (11th ed. 2019).

According to the appellate briefs, CitiMortgage first requested discovery from the Keys in 2016 and the Keys first sent out discovery requests to CitiMortgage in early 2017. New counsel for the Keys had recently entered an appearance in early 2017 after prior counsel withdrew due to serious illness. CitiMortgage sent responses to interrogatories and requests for admissions within several weeks of the Keys' sending out discovery requests. But the Keys complain that CitiMortgage objected to and/or refused to answer several questions.

In early June 2017, CitiMortgage filed a Motion for Summary Judgment[6] and tendered an *In Rem* Judgment and Order of Sale. It attached as an exhibit a bankruptcy schedule of the Keys' debts. The schedule listed the mortgage loan obligation on the Keys' home – stating that $114,186.00 was the principal amount of the claim due without deducting the value of the collateral and indicating the home's value was $130,000. No agreement to reaffirm the home loan debt was noted. Also attached to the summary judgment motion was an affidavit of a CitiMortage business operations analyst and business records relating to the Keys' home mortgage loan.

---

[6] It also sought a Default Judgment against Miranda Key, who had not filed an answer to the complaint. Jerry Key, on the other hand, had filed an answer by counsel in late 2014. Within his answer, Jerry Key also asserted counterclaims against CitiMortgage. However, the parties have not raised substantive arguments about the trial court's handling of the counterclaims in their appellate briefs, so we need not discuss the counterclaims further.

The Keys sought to inspect the note, which CitiMortgage allowed later that summer.[7] The Keys also sought to take the deposition of the business operations analyst or other CitiMortgage representative. They filed a notice of deposition shortly after CitiMortgage filed its motion for summary judgment. CitiMortgage filed a motion for a protective order to block the deposition and for a stay of discovery until the trial court ruled on the summary judgment motion.

The Keys requested and were granted additional time to respond to the motion for a protective order and summary judgment order. They filed a response objecting to the requests for a protective order and stay of discovery later that summer. But they did not file a response to the summary judgment motion that summer.

Meanwhile, the trial court had signed the tendered *In Rem* Judgment and Order of Sale in late June 2017. Keys filed a motion to vacate or set aside that judgment – and the parties tendered an agreed order to vacate or set aside the judgment as well. In mid-July 2017, the trial court entered an order stating it was granting CitiMortgage's motion for a protective order and a stay of discovery with the handwritten notation "at this time."

---

[7] CitiMortgage's then-counsel filed a supplemental affidavit stating that counsel for the Keys inspected the original promissory note in mid-August 2017. (Record ("R."), p. 409). The Keys have not disputed that their counsel inspected the note.

In late July 2017, the trial court initially refused to sign and enter the agreed order to vacate or set aside the *In Rem* Judgment and Order of Sale – apparently because no parties or counsel were present on the hearing date set. In August 2017, the Keys filed a petition for a writ of prohibition. But the Keys did not file a response to the summary judgment motion before filing the writ petition.

After the writ petition was filed, the trial court entered an agreed order vacating and setting aside the judgment and order of sale. It also ordered the Keys would have additional time to file a response to the summary judgment motion and it placed the case in abeyance pending resolution of the writ proceedings. Several weeks later, this Court denied the requested writ. The Keys then appealed to our Supreme Court.

Our Supreme Court affirmed. It stated it agreed with our assessment that there was an adequate remedy by appeal because: "[i]f the trial court grants the motion for summary judgment, then the Keys will be able to raise the issue of the denial of discovery on appeal. If the trial court denies the motion for summary judgment, then the issue of discovery can be revisited." *Key v. Morris*, No. 2017-SC-000642-MR, 2018 WL 6567101, at *2 (Ky. Dec. 13, 2018) (unpublished).[8]

_____

[8] Several different judges presided over this case in the trial court. Judge James Shake originally signed an *In Rem* Judgment and Order of Sale in late June 2017. Judge Geoffrey Morris entered the order staying discovery "at this time" in mid-July 2017 so he was the judge named in the

-6-

Trial court proceedings then resumed in early 2019. Following additional briefing, the trial court referred the matter to a Special Master Commissioner. The Special Master Commissioner recommended the trial court grant the summary judgment and enter an *In Rem* Judgment and Order of Sale.

The trial court entered an *In Rem* Judgment and Order of Sale in October 2021. The Keys timely filed this appeal, claiming the trial court erred in granting the protective order and summary judgment in CitiMortgage's favor.[9]

Further facts will be discussed as needed.

## ANALYSIS

## Trial Court Did Not Abuse its Discretion in Granting Protective Order

CR 26.03 states that a trial court may, upon motion and good cause shown, enter an order not allowing or placing limits on a requested deposition or other discovery request "which justice requires to protect a party or person from

caption of the petition for a writ of prohibition. Other orders were entered by other Jefferson Circuit Court judges. The written record indicates that, following resolution of the writ appeal, Judge Annie O'Connell presided over this case until the present appeal was filed.

[9] The Keys stated they were appealing from the trial court's October 2021 *In Rem* Judgment and Order of Sale – as well as the July 2017 protective order staying discovery – in their Notice of Appeal. Although the Keys attached a copy of the October 2021 judgment to their Notice of Appeal, the appendix to their red brief contains a copy of the late June 2017 *In Rem* Judgment and Order of Sale instead. We presume this error is inadvertent and that the Keys still intend to appeal from the October 2021 judgment instead of the July 2017 judgment which was set aside by the trial court several years ago. We elect to impose no sanctions under these facts. But we remind counsel for future reference that Kentucky Rule of Appellate Procedure ("RAP") 32(E)(1)(a) requires the first item in an appendix to an appellant's brief to be "the judgment, opinion, or order under review . . . ." *See also* former Kentucky Rule of Civil Procedure ("CR") 76.12(4)(c)(vii) (in effect when the red appellant brief was filed). Obviously, the judgment under review here is from 2021, not 2017.

-7-

annoyance, embarrassment, oppression, or undue burden or expense . . . ." "A protective order is within the full discretion and authority of the trial court and is appropriate only to prevent a party from 'annoyance, embarrassment, oppression, or undue expense or burden.'" *Richmond Health Facilities-Madison, LP v. Clouse*, 473 S.W.3d 79, 83 (Ky. 2015) (quoting *Ewing v. May*, 705 S.W.2d 910, 913 (Ky. 1986)). We review this issue for abuse of discretion. *See Clouse*, 473 S.W.3d at 84 (stating our Supreme Court was unwilling to conclude the trial court abused its discretion in granting the protective order at issue).

The trial court's granting of the motion for a protective order and stay of discovery was subject to the judge's handwritten qualification "at this time." CitiMortgage had explicitly requested a stay of discovery only until the trial court ruled on the summary judgment motion. And the Keys had not yet filed their response to the summary judgment motion when the trial court ruled on the motion for protective order and stay of discovery.

In its motion for a protective order and stay of discovery, CitiMortgage pointed to the evidence of the Keys' obligation, CitiMortgage's being the holder of the note and assignee of the mortgage, and the Keys' default, which it submitted with its summary judgment motion. It also noted it sought only an *in rem* judgment and not a personal judgment and that a CitiMortgage representative could only testify based on business records. It asserted that its

analyst's affidavit and supporting documentation showed it was entitled to summary judgment and that further discovery would only result in undue expense and delay.

The Keys' response argued that CitiMortgage's discovery responses were deficient and that CitiMortgage did not show good cause for a protective order but was simply trying to impede the search for the truth. They argued that Kentucky discovery rules were liberal and that delays in discovery might result in loss of evidence due to dimmed memories or witness unavailability. They also contended they were seeking information about CitiMortgage's authority and standing to sue, details about the debt and a complete accounting, communications between the parties and alleged violations of law in servicing the loan. But they did not specifically identify what they hoped to gain through the requested deposition or how it might help them to defeat the summary judgment motion. Nor had they yet filed their response to the summary judgment motion to identify potential genuine issues of material fact.

Despite any lack of risk of embarrassment or annoyance, the record before the trial court at that time supports an inference that a deposition and further discovery would simply result in unnecessary expense and delay under the facts and circumstances of this case. Therefore, though another court may have allowed the deposition to proceed, we discern no abuse of discretion in the trial court's

2017 protective order staying further discovery. *See Clouse*, 473 S.W.3d at 83-84. This is especially true given the limited effect of the trial court's protective order staying discovery "at this time"[10] – in granting CitiMortgage's request for such a stay until the trial court ruled on its summary judgment motion.

**Trial Court Did Not Abuse Its Discretion in Ruling on Summary Judgment Motion in 2021 Despite Arguments of Prematurity and Lack of Adequate Opportunity to Conduct Discovery**

Although the substance of the summary judgment grant is reviewed *de novo* as we later discuss, the reviewing court must also consider whether there was a sufficient opportunity to conduct discovery before the ruling. "The trial court's determination that a sufficient amount of time has passed and that it can properly take up the summary judgment motion for a ruling is reviewed for an abuse of discretion." *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010).

The Keys point out that CitiMortgage filed its summary judgment motion just a few days after submitting responses to discovery requests – an event occurring in 2017. They complain that CitiMortgage did not fully answer

---

[10] Clearly, this 2017 order was not a final and appealable order which resolved all the rights and claims of the parties in the action. *See* CR 54.01. Nor was it an order which stated there was "no just reason for delay" and contained language indicating the trial court's intent to issue a final judgment concerning less than all claims or parties in the action. *See* CR 54.02(1). Thus, this order was "interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." CR 54.02(1). Yet the Keys do not point to any efforts they made to ask the trial court to set aside or revise the 2017 order in the period between the early 2019 resumption of trial court proceedings and the late 2021 final judgment.

discovery requests and refused to make a representative available for deposition. They assert CitiMortgage has not fully cooperated with discovery requests and that the record is incomplete and insufficient to allow the trial court to properly decide the case. But they do not point to any efforts to set aside the 2017 protective order or to obtain or compel discovery after trial court proceedings resumed in 2019.

The Keys argue on appeal that the trial court ruled on the summary judgment motion prematurely without affording them an adequate opportunity to conduct discovery. We disagree.

The trial court granted the appealed-from summary judgment in 2021. This case was filed in the trial court in 2014. The Keys have stated that they first sent out discovery requests in early 2017 – over two years after this case was filed. The case was removed from abeyance in the trial court in early 2019 following resolution of the writ appeal. The Keys do not point to any motions to compel discovery or to vacate or set aside the protective order issued in 2017. Under these circumstances, the trial court did not abuse its discretion in determining that the Keys had adequate opportunity to conduct discovery and that sufficient time had passed for it to rule on the summary judgment motion in 2021. *See id*. at 668.

**Trial Court Did Not Err in Determining that CitiMortgage Met Standard for Obtaining Summary Judgment**

CR 56.03 provides in pertinent part that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, stipulations, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We review a trial court's grant of summary judgment *de novo* – to consider whether the trial court correctly determined there were no genuine issues of material fact and the moving party was entitled to judgment as a matter of law. In making this determination, the evidence must be viewed in the light most favorable to the party opposing judgment. *Cubar v. Town & Country Bank and Tr. Company*, 473 S.W.3d 91, 92 (Ky. App. 2015); *Furlong Development Co., LLC v. Georgetown-Scott Cnty. Planning and Zoning Commission*, 504 S.W.3d 34, 37 (Ky. 2016).

The Keys argue the trial court erred in granting summary judgment because, in their view, there are disputed factual issues including: whether some payments were omitted from an accounting or were not properly credited to the mortgage loan account, whether some account charges were unauthorized and whether CitiMortgage sent a notice of default. They contend the summary judgment must be reversed and the case remanded to permit further discovery. We disagree.

Even assuming some factual disputes exist, not every factual dispute reflects a genuine issue of material fact sufficient to defeat a motion for summary judgment. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 481

(Ky. 1991). Instead, the party opposing summary judgment must show there are "genuine issues of material fact" – meaning that the factual dispute actually affects whether the party moving for summary judgment is entitled to judgment in his/her favor. For example, a factual dispute about a matter which one is not required to prove in order to obtain a foreclosure judgment cannot defeat a summary judgment motion supported by evidence showing that all requirements for foreclosure have been met. *See Croushore v. BAC Home Loans Servicing, L.P.*, 381 S.W.3d 331, 332 (Ky. App. 2012) (any factual dispute or denial of discovery concerning irrelevant matter of how much consideration was paid for mortgage assignment did not defeat well-supported motion for summary judgment showing holder was entitled to enforce the note).

### Despite Any Ancillary Factual Disputes, CitiMortgage Proved It was Entitled to Enforce the Note

CitiMortgage submitted affidavit and documentary evidence showing it was in physical possession of the note, which contained both a specific indorsement to CitiMortgage and a blank indorsement by CitiMortgage. The Keys were also permitted to inspect the note. Thus, CitiMortgage showed that it was a holder of the note and entitled to enforce it. *Augenstein v. Deutsche Bank National Tr. Company as Tr. for Certificateholders of Soundview Home Loan Tr. 2005-OPT4, Asset-Backed Certificates, Series 2005-OPT4*, 647 S.W.3d 857, 861 (Ky. App. 2021), *discretionary review denied* (Aug. 10, 2022).

-13-

As we recently explained:

> "Generally, in foreclosure cases, the real party in interest is the current holder of the note and/or mortgage." *Acuff*, 460 S.W.3d at 339. A holder of a note is entitled to enforce the obligations secured thereby. *Stevenson v. Bank of America*, 359 S.W.3d 466, 470 (Ky. App. 2011). A "holder" is defined as someone "in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]" KRS [11] 355.1-201(2)(u)1. "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." KRS 355.3-205(2); *see also* KRS 355.3-201(1). Accordingly, if a party is in possession of the original note, it is entitled to enforce the obligations secured by it and is the real party in interest. *Stevenson*, 359 S.W.3d at 470.

*Id*.

Furthermore, in the absence of evidence supporting a reason to doubt the authenticity of documents, CitiMortgage's business records accompanied by the analyst's affidavit were credible evidence of its being the holder of the note and the Keys' default:

> KRE 803 [12] explains that records of regularly conducted activity "if kept in the course of a regularly conducted business activity" and the testimony of the records custodian "or other qualified witness" concerning those records are not excluded by the hearsay rule "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Here,

---

[11] Kentucky Revised Statutes.

[12] Kentucky Rules of Evidence.

> Augenstein offered no evidence that Ms. Belcher's affidavit or the documents themselves lack trustworthiness.

*Id.* at 861-62. Similarly, the Keys offered no evidence showing the analyst's affidavit or the documents themselves were untrustworthy.

### January-July 2009 Payment History Was Not Required to Allow CitiMortgage to Enforce the Note Under the Facts Here

The Keys argue CitiMortgage was required to provide a detailed accounting demonstrating the basis for the amount sought in the lawsuit on a defaulted debt obligation, citing *Bruner v. Discover Bank*, 360 S.W.3d 774 (Ky. App. 2012). Therefore, they claim that CitiMortgage's lack of account history from January through July 2009 should defeat the motion for summary judgment.

But CitiMortgage produced the note and mortgage and a history of the default beginning in August 2012. And it is undisputed that the account was up to date through July 2009. Furthermore, *Bruner* concerned credit card debt rather than foreclosure on a mortgage loan and the plaintiff's failure to offer any evidence of its having standing to sue. *See id*. at 778. The Keys do not cite any binding precedent indicating that a complete history of every payment made on a mortgage loan is required to allow a foreclosure judgment and order of sale.

Though the Keys point to the lack of account history regarding the first several months of 2009 in these documents, this was irrelevant to the basic points of CitiMortgage's possession of the note or the fact of the Keys' default –

-15-

which did not take place until 2012. The Keys have not disputed their failure to make further payments from August 2012 onwards. The missing account history about the 2009 months did not establish a genuine issue of material fact about the key issues of CitiMortgage's possessing the note or the Keys' default or defeat CitiMortgage's well-supported summary judgment motion showing it was entitled to judgment in its favor. *See Croushore*, 381 S.W.3d at 332.

Furthermore, especially in light of the Chapter 7 discharge and CitiMortgage's not seeking a personal judgment against the Keys but only an *in rem* judgment, the Keys' arguments about being entitled to further credit based on 2009 payments or allegedly improper charges made on the account have no effect on whether CitiMortgage is entitled to a foreclosure judgment and order of sale. Instead, as CitiMortgage pointed out in its reply to the Keys' response to the summary judgment motion, such issues would only be relevant in the unlikely event that the property sold for an amount well in excess of its estimated value such that the Keys would potentially be entitled to a portion of the purchase price.

CitiMortgage asserts the Keys admitted to the principal amount due being $114,186.00 in the bankruptcy proceedings. In their reply brief, the Keys contend that their listing their mortgage loan obligation in the bankruptcy schedule as a claim for $114,186.00 in principal due plus interest does not mean they admit that a principal amount of that value is due. But regardless of whether or not the

Keys admitted to this being the principal amount due in the bankruptcy proceeding, CitiMortgage came forward with the requisite proof showing it was a holder entitled to enforce the note – especially with business records and supporting affidavit showing that $114,186.00 was the principal amount due on the loan. Furthermore, the matter of any possible proceeds beyond the principal, interest and other obligations coming from the sale could be raised to the trial court later after the foreclosure sale occurs.

Under the terms of the order of sale, the proceeds would be applied first to the costs of the action, then to state and local taxes, then to liens for inspection or permits or licenses, then to satisfy CitiMortgage's lien, and then to any junior liens. After these obligations are satisfied, any remaining proceeds of the sale would be held by the Special Master Commissioner until further order of the trial court. In other words, should the purchase price exceed the total of all of these obligations with priority, the Keys could raise their entitlement to excess proceeds in further proceedings before the trial court.[13]

But regardless of the Keys' potential entitlement to any excess proceeds from the sale after satisfaction of obligations with superior priority, there is no genuine issue of material fact based on any dispute about payment history

---

[13] We do not address hypothetical questions of law, so we decline to explore what impact the Keys' bankruptcy would have on their entitlement to receive any sales proceeds which exceed the amount they owe, plus legally recoverable costs and fees.

details.  CitiMortgage is entitled to the *In Rem* Judgment and Order of Sale in its favor.

**Trial Court Correctly Determined There are No Genuine Issues of Material Fact and CitiMortgage is Entitled to Judgment in its Favor Despite Factual Dispute About Whether the Keys Actually Received the Default Notice**

Paragraph 22 of the Mortgage required that notice be given to the Borrower(s) prior to acceleration.  Paragraph 22 required that this notice specify the default and identify what must be done to cure the default and state a date at least 30 days after the date of the notice by which the action must be taken.  Lastly, Paragraph 22 required that this notice state that failure to cure the default by that date may result in acceleration of the sums secured by the mortgage followed by judicial foreclosure proceedings and a sale of the property.  CitiMortgage offered the analyst's affidavit testimony that it sent a letter, attached as an exhibit to the affidavit, to Jerry Key informing him that the loan was in default and that failure to pay the past due amount plus late charges and deficiency-related expenses would result in the loan's acceleration.

The Keys point out that CitiMortgage does not claim to have sent out a notice of default to Miranda Key.  And they also point out that Jerry Key denied receiving the notice of default in his 2019 affidavit attached to the Keys' response to the summary judgment motion.  But unfortunately for the Keys, these points do not defeat CitiMortgage's entitlement to the judgment and order of sale.

Paragraph 15 of the Mortgage states: "Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise." The Keys have cited no applicable law requiring they both receive notices in contravention of Paragraph 15. So, CitiMortgage's not sending a notice to Miranda Key individually does not defeat summary judgment.

Paragraph 15 also states: "Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means." There is no indication the default letter was sent by means other than regular first-class mail; therefore, the affidavit testimony stating the default notice was sent by CitiMortgage is sufficient – despite Jerry Key's denial of receiving the notice.[14] Furthermore, the default notice complies with the requirements for notice of acceleration in Paragraph 22 of the Mortgage, including

[14] *See Louthan v. Dollar Bank, FSB*, No. 2018-CA-000820-MR, 2020 WL 2298431, at *6 (Ky. App. May 8, 2020)(unpublished) ("regarding the issue of notice the applicable provisions in the note and mortgage required Dollar Bank to send a notice of default by first-class mail to the address listed in those documents or to another address provided by the borrower. Contrary to Ms. Louthan['s] assertions, those provision[s] do not condition the effectiveness of a notice on the borrower actually receiving it. In other words, all Dollar Bank needed to do to comply with the notice provisions was to send the notice of default to the appropriate address by first-class mail. Dollar Bank presented copies of the notices it sent by first class mail to Ms. Louthan's address in Kentucky, which is the address listed in the note and mortgage, and to the address that it had on file for her in Florida. Because those documents demonstrate that Dollar Bank complied with the notice provisions in the note and mortgage, Ms. Louthan's assertions to the contrary lack all merit."). Though this unpublished case is not binding authority, we find its reasoning persuasive and cite it in the absence of binding Kentucky authority on this issue. *See* RAP 41(A) (effective January 1, 2023); *see also* former CR 76.28(4)(c) (in effect, when initial appellant brief was filed in December 2022).

specifying the default, how to cure the default, giving a date at least 30 days from the date of notice by which the default must be cured and stating that failure to cure by that date may result in acceleration.

Notwithstanding these factors, the Keys argue the notice of default was suspiciously sent out before the mortgage assignment occurred. The notice of default is dated August 12, 2013. And the mortgage assignment was notarized in May 2014. But it was not the assignment of the mortgage which transferred the right to enforce the note to CitiMortgage. Instead, the undated transfer of possession of the note to CitiMortgage and CitiMortgage's indorsement of the note in blank made CitiMortgage a holder entitled to enforce the note regardless of the date of notarization on the mortgage assignment – which may have been "solely for the purpose of memorializing the transaction and updating the public records." *See Stevenson*, 359 S.W.3d at 470. *Accord, Acuff*, 460 S.W.3d at 339-40.

The Keys failed to show the existence of a genuine issue of material fact concerning the sending of the default notice. CitiMortgage was entitled to the *In Rem* judgment and order of sale based on the record before us. Further arguments or issues raised in the briefs which are not discussed herein have been determined to lack merit or relevancy to our resolving this appeal.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the Jefferson Circuit Court's judgment.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Zachary L. Taylor
Louisville, Kentucky

BRIEF FOR APPELLEE
CITIMORTGAGE, INC.:

Jeffrey M. Hendricks
Cincinnati, Ohio