*81
OPINION AND ORDER

Richmond Health Facilities-Madison, LP (Richmond Health) and Extendicare, Inc. (Extendicare)[1] petition this Court for a writ of prohibition to prevent the trial court from compelling the production of various document's associated with the care provided at the long-term-care facilities within their control. The Court of Appeals denied Richmond Health and Extendi-care’s petitions because it found no error in the trial court’s decision to allow discovery of the documents; specifically, the court allowed discovery because the parties had failed to provide sufficient evidence that the Federal Quality Assurance Privilege (FQAP) applied to the documents in question. For reasons set forth below, we affirm the Court of'Appeals and deny the issuance of a writ.
I. FACTUAL AND PROCEDURAL BACKGROUND.
In 2012, Geraldine McCafferty was admitted to Richmond Health, a nursing facility owned and operated by Extendicare. But McCafferty’s' health rapidly deteriorated so she was transferred to the University of Kentucky Chandler Hospital after only a month’s stay. Eventually, McCafferty passed away. Following McCafferty’s death, Sharon Breshers, the Administratrix of McCafferty’s estate, filed suit against Richmond Health and Exten-dicare, alleging wrongful death, nursing-home abuse, and corporate negligence. The gravamen of Breshers’s claim is that Extendicare, in an attempt to boost profits, purposefully diverted necessary funds from Richmond Health; and, as a result, McCafferty was deprived of adequate medical care, which led to her death.
During discovery, Breshers sought the production of various. documents relating to Richmond Health’s clinical monitoring and oversight., In addition, Breshers. requested documents dealing with corporate finance matters alleged to indicate Exten-dicare’s negligence in funding Richmond Health. Of course, Richmond Health and Extendicare rejected Breshers’s requests ás an irrelevant fishing expedition for privileged information.
The trial court ordered Richmond Health and Extendicare to produce the requested financial documents and allegedly privileged information. In its order, the trial court did take certain precautions against the disclosure of any potentially private information by issuing a protective Order covering patient and personnel files, as well as corporate accounting methodologies perhaps considered proprietary.
Richmond Health and Extendicare, .co-defendants at the trial level, separately sought prohibitive writs from the Court of Appeals. Both parties argued the documents sought by Breshers were privileged under FQAP and, therefore, should not be produced. Additionally, Richmond Health and Extendicare argued their financial information was irrelevant and the trial court erroneously denied their request for a protective order. . The petitions were heard by separate panels of the Court of Appeals, but the same result was reached. Both Richmond Health and "Extendicare failed to produce a privilege log so each Court of Appeals- panel held the petitions fell short of the high burden involved when asserting-a-claim of privilege. Likewise, each panel held financial information was relevant to Breshers’s punitive-damages claim. As for the protective order, the record indicated that Extendicare had al *82 ready disclosed the information the protective order' sought to cover so its writ petition-was denied; and Richmond Health’s panel held it had an adequate appellate remedy with regard to the protective order so its petition was denied.
Operating separately yet again, Richmond Health and Extendieare now petition this Court for a writ of prohibition under Kentucky Rules of' Civil Procedure (CR) 76.36(7)(a).[2]
II. ANALYSIS.
When ruling on a writ petition, we must first determine if the writ is appropriate. We review the merits of a writ petition and, in turn, the soundness of a trial court’s decision, only if a writ is a suitable remedy.. The issuance of,a writ always lies within this Court’s discretion.[3] Truly a remarkable remedy, a writ action commands conservative use of that discretion “to prevent short-circuiting normal appeal procedure[.]”[4] Accordingly, a writ should issue only:
[Ujpon a, showing .that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.[5]
Essentially, writs are divided into two classes. Richmond Health and Extendi-care invoke the second class of writ as they argue the trial court acted erroneously within its jurisdiction. So our review is for abuse of discretion, ie., a decision that is arbitrary, unreasonable, unfair, or unsupported by sound legal principles.[6] A writ will only issue within this writ class if a petitioner can prove irreparable injury, great injustice, and the absence of an appellate remedy.[7]
When faced with particular circumstances, we have excused the great-and-irreparable-injury element in order “to preserve the orderly administration of the laws.”[8] These “certain special cases” exist where “a substantial miscarriage of justice will result, if the lower court is proceeding erroneously! ] and correction of the error is necessary and appropriate in the interest of orderly judicial administration.” [9] Our application of this exception is rare, however, limited primarily to circumstances, where the “action for which the *83 writ is sought would violate the--law, &£?.[,] by breaching a tightly guarded privilege or by contradicting the requirements of a civil rule.”[10]- Of course, Richmond Health and Extendicare argue the instant situation constitutes a “certain special case.” We disagree. . ,
A. The Production of Financial Information was Properly Compelled.
Initially, Richmond Health and Ex-tendicare argue the Court of Appeals erred in allowing the trial court to compel the. production of the financial information requested by Breshers. The main point of Richmond Health’s and Extendicare’s argument is that the financial information sought by Breshers is irrelevant and, in turn, irreparably harmful.
 We do well to remind Richmond Health and Extendicare that. CR 26.02, our rule governing the permissible, scope of discovery in civil litigation, trends toward discovery, permitting discovery “regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action....”[11] Relevancy “is more loosely construed upon 'pre-trial -examination than at the trial, and the Rule requires only relevancy to the subject matter involved in the action.”[12] The Court of Appeals found the challenged financial information was relevant to Breshers’s claim for punitive damages. We agree- but, more importantly, the financial information of Richmond Health and Extendicare Breshers seeks is central to her entire negligence claim. We are at a loss for how corporate financial information could be irrelevant to a claim asserting deliberate withholding or manipulation of funds. •
Considering that the information is clearly relevant, we see no way in which Richmond Health or Extendicare would suffer irreparable injury or satisfy to any degree the requirements for the application of our certain-special-cases exception. There is no great injustice or substantial miscarriage of justice in compelling a party to producé clearly relevant information. We affirm the ’Court of Appeals.
B. The Court of Appeals Appropriately Denied Richmond Health’s and Ex-tendicare’s Request for a Protective Order.
At the Court of Appeals, both Richmond Health and Extendicare sought a protective order for the disclosure of their financial information. In Richmond Health’s case, the Court of Appeals denied the protective-order request because it found there was. an adequate remedy on appeal, citing Hoffman v. Dow Chemical Co.[13] As for Extendicare, the Court of Appeals found that “the information Extendicare soughit to have protected has already been disclosed to Breshers” so a protective order was unwarranted. _We agree.
A protective order is within the full discretion and authority of the trial court and is appropriate only to prevent a party from “annoyance, embarrassment, oppression, or undue expense or burden.”[14] Notably, the trial court did, in fact, enter a protective order. In doing so, the trial court properly gave due weight to Bresh-ers’s discovery request while balancing— or attempting to at the very least — Exten-dicare’s and Richmond Health’s desire or need to keep corporate matters out of the *84 public domain. Extendicare and Richmond Health remain unhappy with the scope of the trial court’s protective order. Be that as it may, Extendicare and Richmond Health present no colorable argument as to why exactly the protective order should be broadened. As we explain below with regard to FQAP, Extendicare’s and Richmond Health’s tactic of making broad allegations of imminent harm or entitlement to relief are unavailing as they afford us little review capability. Given the record before us, we have no reason to doubt the trial court granted adequate relief as Extendicare and Richmond Health have presented nothing specific as to why the trial court’s protective order was insufficient.
Perhaps a protective order would be appropriate if we were aware of what Richmond Health and Extendicare were trying to protect. Much like we discuss below with regard to the FQAP’s scope, Richmond Health and Extendicare have simply failed to make any argument sufficient to meet the burden they carry in seeking a more expansive protective order. We aré unwilling and — in light of the record — unable to conclude the trial court abused its- discretion. Extendicare and Richmond Health are not entitled to a writ, nor are they entitled to a protective order. We affirm the Court of Appeals on this issue.
C. Richmond Health and Extendicare Fall Short of their Burden to Show the FQAP Privilege Applies.
Finally, Richmond Health and Ex- . tendicare argue that despite the financial information’s supposed relevancy, FQAP renders it privileged.' In an attempt to improve the quality of care afforded to nursing home residents, Congress enacted in 1987 the Federal Nursing Home Reform Act (FNHRA),[15] of which FQAP was a subsection. Broadly, FQAP requires “skilled nursing facilities]”[16] and “nursing facilities]”[17] to establish a quality assessment and assurance committee in an attempt to ensure nursing homes are vigilant about the quality of care their residénts are receiving. As for the privilege aspect, FQAP states; “A State or the Secretary may not require disclosure of the records of such committee except insofar as such disclosure is related to the compliance of such committee with the requirements of this subparagraph.”[18] It is this provision Richmond Health and Extendicare now argue bars compliance with Breshers’s discovery requests.
We have yet to have occasion to interpret FQAP’s scope.. In actuality, only two states and one federal court have had such an opportunity. From this paucity of case law, two rules have emerged: the Missouri Rule[19] and the New York Rule.[20] Richmond Health and Extendicare petition this Court to decide affirmatively between these two interpretations. Perhaps this is an important issue — no doubt it is enticing — but, for the reasons set forth below, we find it unnecessary to make the choice Richmond Health and Extendicare ask of us.
Before the Court of Appeals, Richmond Health argued Breshers failed to provide *85 “reasonable notice” of the motion to compel ás CR 37.01 mandates.[21] According to Richmond Health’s account, Breshers’s motion was only provided to Extendicare. Richmond Health allegedly only received oral notice of the motion at the motion’s hearing. The Court of Appeals rejected Richmond Health’s argument, noting that the limited record provided no guidance; and, as a result, it was impossible to “determine if the issue of lack of notice was brought to the attention of the trial court.” Faced with a silent record on the issue, the Court of Appeals followed our precedent and presumed the trial court’s decision was supported by the record. If Richmond Health'truly received unreasonable notice of Breshers’s motion, it should have produced the record of the hearing. After all, in a writ action — an original action at an appellate court — it is even more important to preserve properly the record because, contrary to normal appellate procedure, “the trial court’s record is unavailable^ and, instead, the appellate record] consists only of what the parties have included with their filings.”[22]
Richmond Health can offer no evidence to support its argument that Breshers did not provide “reasonable notice” of her motion to compel. It was this alleged lack of notice, though, that Richmond Health argues prohibited it from producing a privilege log or, for that matter, any form of documentation identifying what FQAP should apply* to. Extendicare likewise did not produce a privilege log or any sort of documentation about the allegedly privileged documents, but Extendicare did receive notice of Breshers’s motion to compel.
It is axiomatic that a party who asserts a privilege bears the burden of proving the privilege applies.[23] Equally fundamental and uncontested is the principle that testimonial privileges are disfavored and should be strictly construed.[24] To put it simply, both Richmond Health and Extendicare have failed to carry their burden to show that FQAP applies, under any standard — Missouri or New York Rules aside. We have previously rejected a writ petition to protect a claimed privilege where “the record before us was insufficient to permit a determination whether any or all of the. [documents we]re subject to the ... privilege.”[25] Neither Richmond Health nor Extendicare has sought in-camera review of the documents or produced an even relatively detailed description of what the documents contain. So we are left with nothing more than Richmond Health’s arguments about the documents — a level of evidence we have previously deemed insufficient.[26] Based on the record before us, we are unwilling to say the trial court acted erroneously in granting Breshers’s motion to compel.
Judicial restraint, rather than reaching into the somewhat murky FQAP world, is *86 the proper elixir for this case. Again, even if we were to select a rule governing the application of FQAP, there is nothing to which to-apply it.- Richmond Health and Extendicare have given the courts-nothing more than vague references -to documents (most likely to obtain a broad discovery prohibition) and then requested we perform the spectacular task of secreting them away from Breshers. It bears repeating that blanket assertions of privilege are not sufficient.
We reject the writ petitions — they do not meet our writ standard and, in our estimation, would be nothing more than advisory. Essentially, Richmond Health’s and Extendicare’s arguments are not properly preserved for' our review — indeed, there is nothing to review. A writ is an extraordinary remedy, and this Court will not initiate the practice of using writs to save parties from their own litigation stumblings.
III. CONCLUSION.
We affirm the denial of the writs by the Court of Appeals.
All sitting. Minton, C.J.; Abramson, - Noble, and Keller, JJ., concur. Barber, J., concurs in result only by separate opinion in which Cunningham and Venters, JJ., join.

. Various corporate iterations of both Richmond Health and Extendicare are involved in this writ action as co-defendants. For the sake of simplicity, we simply use "Richmond Health” and "Extendicare,” -singularly, -to refer to the respective collection of defendants.

. Kentucky Rules of Civil Procedure (CR) 76.36(7)(a) reads: "An appeal may be taken to the Supreme Court as a matter of right from a judgment or final order in any proceeding originating in the Court of Appeals."

. Hoskins v. Maride, 150 S.W.3d 1, 5 (Ky.2004) (citation omitted).

. Bender v. Eaton, 343 S.W.2d 799, 800 (Ky.1961).

. Hoskins, 150 S.W.3d at 10.

. See Tax Ease Lien Investments 1, LLC v. Commonwealth Bank & Trust, 384 S.W.3d 141, 143 (Ky.2012) (noting that standing is a question of law subject to de novo review); Grange Mut. Ins. Co. v. Trude, 151 S.W.3d 803, 810 (Ky.2004)(highlighting de novo review is typically appropriate under the first class of writs because jurisdiction is a question of law).

. Hoskins, 150 S.W.3d at 9 ("But if the petition alleged only that the trial court was acting erroneously within its jurisdiction, a writ would issue only if it was shown that there was no adequate remedy by appeal and great injustice and irreparable harm would otherwise occur.”).

. Ohio River Contract Co. v. Gordon, 170 Ky. 412, 186 S.W. 178, 181 (1916).

. Hoskins, 150 S.W.3d at 20 (quoting Bender, 343 S.W.2d at 801).

. Grange Mut., 151 S,W,3d at 808 (quoting Bender, 343 S.W.2d at 801).

. Maddox v. Grauman, 265 S.W.2d 939, 941 (Ky.1954).

.Id.

. 413 S.W.2d 332, 334 (Ky. 1967).

. Ewing v. May, 705 S.W.2d 910, 913 (Ky.1986).

. See 42 U.S.C. 1396r, et seq.; 42 U.S.C. 1395Í-3, et seq.; 42 C.F.R. 483, et seq.

. 42 U.S.C. 1395i — 3(b)(1)(B).

. 42 U.S.C. 1396r(b)(l)(B).

. 42 U.S.C. 1395i — 3(b)(1)(B).

. See State ex rel. Boone Ret. Ctr. v. Hamilton, 946 S.W,2d 740 (Mo.1997) (en banc),

. See In re Subpoena Duces Tecum to Jane Doe, Esq., 99 N.Y.2d 434, 757 N.Y.S.2d 507, 787 N.E.2d 618 (2003).

. CR 37.01 ("A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows: _”) (emphasis added).

. Collins v. Braden, 384 S.W.3d 154, 163 (Ky.2012).

. Stidham v. Clark, 74 S.W.3d 719, 725 (Ky.2002).

. Id. at 722.

. Collins, 384 S.W.3d at 163 (quoting Lexington Pub, Library v. Clark, 90 S.W.3d 53, 63 (Ky.2002)).

. Id. at 163-64 ("All we have to go on is the hospital's argument about the content of the documents.... Without more certainty about the content of those documents, a reviewing court cannot determine whether any statements are even in the documents or whether any statements are covered by the privilege.”).