RENDERED: DECEMBER 17, 2020
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0001-MR

HENDERSON COUNTY HEALTH CARE
CORPORATION D/B/A REDBANKS
SKILLED NURSING FACILITY;
KEN GRAVES, IN HIS CAPACITY AS
ADMINISTRATOR OF REDBANKS
SKILLED NURSING FACILITY; AND
WELLS HEALTH SYSTEMS, INC.

APPELLANTS

ON APPEAL FROM COURT OF APPEALS
NO. 2019-CA-1067
V.        HENDERSON CIRCUIT COURT NO. 17-CI-00231

HONORABLE KAREN LYNN WILSON,
JUDGE, HENDERSON CIRCUIT COURT
AND
ROLAND E. MCGUIRE, AS
ADMINISTRATOR OF THE ESTATE
OF JACQUELINE E. MCGUIRE,
DECEASED

APPELLEE

REAL PARTY IN INTEREST

**OPINION OF THE COURT BY JUSTICE KELLER**

**REVERSING**

Henderson County Health Care Corporation d/b/a Redbanks Skilled
Nursing Facility (hereinafter "Redbanks") appeals from the Court of Appeals'
denial of its petition for a writ to prohibit the enforcement of an order issued by
Judge Karen Wilson of the Henderson Circuit Court compelling Redbanks to
produce certain consultant reports to Roland McGuire (hereinafter "McGuire"),

the real party in interest. After a thorough review of the facts and the law, we reverse the Court of Appeals.

## I. BACKGROUND

Jacqueline E. McGuire (hereinafter "Ms. McGuire") was a resident at Redbanks from 2010 to 2016. According to the complaint filed by McGuire, who is Ms. McGuire's brother, Ms. McGuire suffered multiple injuries while at Redbanks, including serious bedsores. Ms. McGuire eventually died at another facility, and McGuire, as administrator of her estate, filed suit against Redbanks.

During the discovery process, McGuire served Redbanks with requests for production of documents. Included in these requests were the following three requests at issue in this case.

> Request for Production No. 41: Please produce all surveys, mock survey visits, documents, reports, and tools, including quarterly site visits and all focused/follow up visits, applicable to the residency of Jacqueline E. McGuire, and six months before, which memorialize Defendants' evaluation and monitoring of the facility's compliance with mandatory regulations, policies and procedures, and care given to the residents.

> Request for Production No. 42: Please produce all documents reflecting and/or reviewing clinical outcomes in the facility during the residency of Jacqueline E. McGuire including Dashboard and Clinical Outcomes reports (COR) and QI/QM Reports and Flags.

> Request for Production No. 48: Please produce all documentation and/or reports from any consultant or management personnel hired to evaluate the adequacy of care rendered to residents at the facility anytime during residency.

Redbanks refused to turn over certain documents arguably included within these requests, and McGuire filed a motion to compel. Specifically disputed

2

were nurse consultant reports and whether the Federal Quality Assurance Privilege (FQAP), 42 U.S.C. § 1396r(b)(1)(B) and 42 U.S.C. § 1395i-3(b)(1)(B), protects these reports from disclosure.

In 1987, the United States Congress enacted the Federal Nursing Home Reform Act (FNHRA), of which the FQAP is a subsection. *See* 42 U.S.C.[1] § 1396r, et seq.; 42 U.S.C. § 1395i–3, et seq.; 42 C.F.R. 483, et seq. "Broadly, FQAP requires 'skilled nursing facilit[ies]' and 'nursing facilit[ies]' to establish a quality assessment and assurance committee in an attempt to ensure nursing homes are vigilant about the quality of care their residents are receiving." *Richmond Health Facilities-Madison, LP v. Clouse*, 473 S.W.3d 79, 84 (Ky. 2015) (footnotes omitted). The FQAP protects from disclosure the records of that committee. It states, "[a] State or the Secretary may not require disclosure of the records of such committee except insofar as such disclosure is related to the compliance of such committee with the requirements of this subparagraph." 42 U.S.C. § 1395i–3(b)(1)(B). At issue in this case is whether the nurse consultant reports are "the records of [the quality assessment and assurance] committee" and therefore privileged.

In compliance with the FNHRA, Redbanks has established a Quality Assurance Performance Improvement (QAPI) committee. Redbanks's QAPI committee contracts with an independent contractor, Wells Health Systems (hereinafter "Wells"), to consult with it and, according to the trial court, "to

---

[1] United States Code.

3

evaluate the facility's quality of care and provide guidance where care can be improved." Wells employs nurse consultants who perform site visits at Redbanks approximately monthly. These nurse consultants examine residents' medical charts ("chart audits"), observe Redbanks's staff perform their duties ("compliance rounds"), and review various statistical data. They compile reports that are then provided to the QAPI committee. It is undisputed that the nurse consultants are not employees of Redbanks and are not members of Redbanks's QAPI committee.

The trial court found the nurse consultant reports were not records of the QAPI committee, as they were not created *by* the committee, and ordered Redbanks to produce them. Redbanks then filed a petition for a writ of prohibition in the Court of Appeals to prevent disclosure of these reports. The Court of Appeals denied the writ petition, holding that the trial court did not err in finding the documents were not protected by the FQAP, as they "were not generated by Redbanks' quality assurance committee, 'nor were they minutes, internal papers or conclusions of' the committee." Redbanks appealed to this Court.

## II. ANALYSIS

### A. Writ standard

We begin our writ analysis by reiterating that "[t]he issuance of a writ is an extraordinary remedy that is disfavored by our jurisprudence. We are therefore 'cautious and conservative both in entertaining petitions for and in granting such relief.'" *Caldwell v. Chauvin*, 464 S.W.3d 139, 144-45 (Ky. 2015)

4

(citing *Ridgeway Nursing & Rehab. Facility, LLC v. Lane*, 415 S.W.3d 635, 639 (Ky. 2013); *Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky. 1961)). Writs "are truly extraordinary in nature and are reserved exclusively for those situations where litigants will be subjected to substantial injustice if they are required to proceed." *Indep. Order of Foresters v. Chauvin*, 175 S.W.3d 610, 615 (Ky. 2005).

Extraordinary writs may be granted in two classes of cases. The first class requires a showing that "the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court." *Hoskins v. Maricle,* 150 S.W.3d 1, 10 (Ky. 2004). The second class requires a showing that "the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise." *Id.* This second class also usually requires a showing that "great injustice and irreparable injury will result if the petition is not granted." *Id.* There are, however, special cases within the second class of writs that do not require a showing of great injustice and irreparable injury. In those special cases, a writ is appropriate when "a substantial miscarriage of justice" will occur if the lower court proceeds erroneously, and "correction of the error is necessary in the interest of orderly judicial administration." *Chauvin*, 175 S.W.3d at 616 (quoting *Bender*, 343 S.W.2d at 801). Even in these special cases, the party seeking a writ must show that there is no adequate remedy by appeal. *Id.* at 617. "No adequate remedy by appeal" means that the party's injury "could not thereafter be rectified in

5

subsequent proceedings in the case." *Id.* at 615 (quoting *Bender*, 343 S.W.2d at 802). Redbanks seeks this writ of prohibition under the second class of writs.

We summarized the standard for appellate review of a lower court's decision in a writ action in *Appalachian Racing, LLC v. Commonwealth*:

> We employ a three-part analysis in reviewing the appeal of a writ action. We review the Court of Appeals' factual findings for clear error. Legal conclusions we review under the de novo standard. But ultimately, the decision whether or not to issue a writ of prohibition is a question of judicial discretion. So review of a court's decision to issue a writ is conducted under the abuse-of-discretion standard. That is, we will not reverse the lower court's ruling absent a finding that the determination was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."

504 S.W.3d 1, 3 (Ky. 2016) (internal citations omitted).

The first requirement for a writ under the second class is that the party requesting the writ have no adequate remedy by appeal. In writ petition cases where discovery is sought, this Court has explained "that there will rarely be an adequate remedy on appeal if the alleged error is an order that allows discovery." *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 810 (Ky. 2004). Furthermore, this Court has explained that "[o]nce...information is furnished it cannot be recalled.... The injury suffered...will be complete upon compliance with the order [mandating disclosure of discovery] and such injury could not thereafter be rectified in subsequent proceedings in the case. Petitioners have no other adequate remedy." *Id.* at 810-11 (quoting *Bender*, 343 S.W.2d at 802).

In this case, McGuire is seeking discovery of nursing consultant reports that Redbanks alleges are privileged. If those reports are disclosed to McGuire,

6

that information "cannot be recalled." Therefore, we hold that Redbanks has no adequate remedy by appeal.

The next requirement of a writ of the second class is that great and irreparable harm will result if the petition is not granted. Kentucky courts have repeatedly defined "great and irreparable harm" as "something of a ruinous nature." *Bender*, 343 S.W.2d at 801. However, our courts have recognized a subset of second class writs in certain special cases.

> [I]n certain special cases this Court will entertain a petition for prohibition in the absence of a showing of specific great and irreparable injury to the petitioner, provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration. It may be observed that in such a situation the court is recognizing that if it fails to act the administration of justice generally will suffer the great and irreparable injury.

*Id.* We have applied the certain special cases exception when "the action for which the writ is sought would violate the law, e.g. by breaching a tightly guarded privilege or by contradicting the requirements of a civil rule." *Trude*, 151 S.W.3d at 808 (citing *Wal-Mart Stores, Inc. v. Dickinson*, 29 S.W.3d 796, 803 (Ky. 2000); *Bender*, 343 S.W.2d at 803). In this case, Redbanks alleges that disclosure of the nurse consultant reports would violate a privilege conferred upon it by the FNHRA. As such, Redbanks's writ petition has met the requirements to fall within the certain special cases exception.

7

**B. Privilege**

This Court has long held that "privileges should be strictly construed, because they contravene the fundamental principle that 'the public ... has a right to every man's evidence.'" *Sisters of Charity Health Sys., Inc. v. Raikes*, 984 S.W.2d 464, 468 (Ky. 1998) (citing *Trammel v. United States,* 445 U.S. 40, 45 (1980)). As such, "claims of privilege are carefully scrutinized." *Id.* at 469 (citation omitted). Furthermore, "the burden of proving that a privilege applies rests on the party claiming its benefit." *Id.*

Quality assurance committees, in general, "are 'key internal mechanisms that allow nursing homes opportunities to deal with quality concerns in a confidential manner and can help them sustain a culture of quality improvement.'" *In re Subpoena Duces Tecum to Jane Doe, Esq.*, 787 N.E.2d 618, 621 (N.Y. 2003) (quoting Report of Off. of Inspector Gen., Dept. of Health & Human Servs., *Quality Assurance Committees in Nursing Homes,* Jan. 2003, at 2 [republished at <http://www.courts.state.ny.us/reporter/webdocs/Quality__ Assurance.pdf>]). The FQAP fosters "a culture of quality improvement" by "promot[ing] the quality of care through self-review without fear of legal reprisal." *Id.* (quoting *Katherine F. v. State of New York*, 723 N.E.2d 1016 (N.Y. 1999)). In likening the policies behind the FQAP to those behind a privilege for hospital-based quality assurance committees under the State Education Law, the Court of Appeals of New York explained that "such protections enhance the objectivity of the review process and ensure that the committees may frankly and objectively analyze the quality of health services rendered." *Id.* (citations

8

and internal quotation marks omitted). Further, "[t]he cloak of confidentiality covering quality assurance procedures and materials is designed to encourage thorough and candid peer review and thereby improve the quality of care." *Id.* (citation and internal asterisks omitted).

As explained above, the FQAP protects "the records of" a nursing facility's quality assessment and assurance committee from disclosure. The issue before us today is whether reports of outside nurse consultants qualify as "records of" Redbanks's QAPI committee. The question of the scope of the FQAP has come before this Court only once before. *See Clouse*, 473 S.W.3d 79. However, in that case, we were unable to squarely address it because the parties asserting the privilege failed to produce the documents for an in camera review or even produce a relatively detailed description of what the documents contained. *Id.* at 85. Without the documents themselves or additional information about the documents, we held that the nursing facility failed to meet its burden of showing that the documents were privileged. *Id.* In the case before us today, however, Redbanks has filed under seal various nurse consultant reports for our review. Accordingly, we will answer the question that *Clouse* left unanswered.

Few jurisdictions have interpreted the scope of the FQAP. Of those that have, two approaches have emerged. The first and more narrow interpretation has been called "the Missouri Rule." The second, broader interpretation of the FQAP has been dubbed "the New York Rule."

9

*1. The Missouri Rule*

In *State ex rel. Boone Retirement Center, Inc. v. Hamilton*, the Supreme Court of Missouri limited the FQAP privilege so that it only "protects the committee's own records–its minutes or internal working papers or statements of conclusions." 946 S.W.2d 740, 743 (Mo. 1997). That court stated, "[n]o honest reading of the statute, however, can extend the statute's privilege to records and materials generated or created outside the committee and submitted to the committee for its review." *Id.* That court's interpretation of the statute focused primarily on whether the privilege applied to a grand jury subpoena, and its analysis on that issue was detailed. However, its analysis regarding its interpretation of the phrase "the records of such committee" was significantly more limited and seems to focus on the plain statutory language.

The United States District Court for the Eastern District of Tennessee only noted the Missouri court's interpretation of the privilege and found that court's reasoning to be persuasive and adopted it. *Brown v. Sun Healthcare Group, Inc.*, No. 3:06-CV-240, 2008 WL 1751675, at *4 (E.D. Tenn. Apr. 14, 2008). It then echoed Missouri's holding and found that "the privilege created under the [Social Security Act] applies only to the committee's own records, including its minutes, internal working papers, and statements of conclusions, not to documents generated outside the committee and submitted to the committee for its review." *Id.*

The highest federal court to have analyzed the scope of the FQAP is the United States Court of Appeals for the Third Circuit in *Jewish Home of Eastern*

10

*PA v. Centers for Medicare and Medicaid Services*, 693 F.3d 359 (3d Cir. 2012).

In that case, the Third Circuit was tasked with determining if "event report

forms and witness interview statements that accompanied those reports" were

shielded from disclosure by the FQAP. *Id.* at 361. The court held the reports

were not privileged, as "the documents in question were contemporaneous,

routinely-generated incident reports that were part of the residents' medical

records and were not minutes, internal papers, or conclusions generated by the

Quality Assurance Committee." *Id.* at 362.

Although the Third Circuit cited to *Boone Retirement Center* when it held

that "[t]he language of 42 U.S.C. § 1396r(b)(1)(B),…limits the scope of

protection from discovery to the records generated by the Quality Assurance

Committee," *id.*, it did not define the phrase "generated by" as used in the rule

it laid out. In fact, the court noted that an administrative law judge found the

documents "were given to [the committee] at the time of the surveys and were

not produced by *or at the behest of* the Quality Assurance Committee" and that

the nursing home "presented no evidence to suggest otherwise." *Id.* (emphasis

added). The court went on to note that a doctor's affidavit that was relied upon

by the nursing home "simply does not state that the Event Reports were

created by *or at the direction of* the Quality Assurance Committee." *Id.*

(emphasis added). Finally, the court noted that the nursing home was required

to generate the reports under another federal statute. *Id.* These extra

observations and statements made by the Third Circuit could leave room for

11

that court to interpret the FQAP more broadly if, in the future, it would be presented with a different set of facts.

### 2. *The New York Rule*

In the case of *In re Subpoena Duces Tecum to Jane Doe, Esq.*, the Court of Appeals of New York, that state's highest court, discussed the purposes behind quality assurance committees and the confidential nature of their work. 787 N.E.2d at 621. It then explicitly declined to adopt the Missouri rule "because the federal statute does not restrict quality assurance records to only those reports created by quality assurance committee members themselves." *Id.* at 623. Instead, that court held "the language 'records of such committee' (42 USC § 1396r [b][1][B][ii]) [] encompass[es] within its parameters any reports generated by or at the behest of a quality assurance committee for quality assurance purposes." *Id.* It went on to explain,

> where the committee simply duplicates existing records from clinical files, no privilege will attach. However, compilations, studies or comparisons of clinical data derived from multiple records, created by or at the request of committee personnel for committee use, are "records of such committee" and are entitled to protection from disclosure pursuant to federal law.

*Id.* In explaining what documents are not included in the privilege, the court stated,

> Where facilities are compelled by a statutory or regulatory dictate to maintain a particular record or report that is not expressly related to quality assurance, the fact that a quality assurance committee reviews such information for quality assurance purposes does not change the essential purpose of the document. A facility may not create a privilege where none would otherwise exist merely by assigning the duty for compliance or compilation to a quality assurance committee.

12

*Id.* at 622.

The United States District Court for the Northern District of Georgia found the New York rule to be "the more reasoned view" in *United States v. Lilburn Geriatric Center, Inc.*, No. 1:03-CV-1517-JEC, 2003 WL 27381235, at *5 (N.D. Ga. Sept. 23, 2003). That court supported the New York rule by likening the FQAP to the attorney-client privilege. "[D]ocuments created by a third party at the direction of the attorney, to be used in conjunction with the legal services the attorney is providing the client, are also protected by the attorney-client privilege." *Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)). The court then went on to explain, "[w]here counsel seeks and obtains outside consulting services, the attorney-client privilege has been extended to such third parties 'employed to assist a lawyer in the rendition of legal services.'" *Id.* (quoting *Abdallah v. The Coca-Cola Co.*, No. CIV A1:98CV3679RWS, 2000 WL 33249254, at *3 (N.D. Ga. Jan. 25, 2000) (Scofield, Magistrate J.)). Finally, the court held,

> the "records of such committee," found at 42 U.S.C. §§ 1395i-3(b)(1)(B) and 1396r(b)(1)(B) (2003), encompass both the records actually generated by the [Quality Assessment & Assurance (QA&A)] Committee and those generated by non-committee members at the behest of the QA&A Committee....The Court notes, however, that documents created outside the QA&A Committee do not become privileged merely because the QA&A Committee reviewed them. Rather, such documents are only privileged if they were generated at the request of and for use by Lilburn's QA&A Committee.

*Id.* at *6.

13

*3. The nurse consultant reports are records of Redbanks's QAPI committee and are protected by the FQAP.*

In determining whether the nurse consultant reports at issue in this case are "records of" Redbanks's QAPI committee and therefore protected by the FQAP, we are cognizant of the competing interests on both sides of this issue. On the one hand, privileges "contravene the fundamental principle that 'the public...has a right to every man's evidence.'" *Sisters of Charity Health Sys., Inc.*, 984 S.W.2d at 468 (quoting *Trammel,* 445 U.S. at 45). These types of records may contain highly relevant information about the dangerous conditions in nursing homes and the facility's potential knowledge of those conditions. We further recognize "the interest in ensuring that tort victims may access and use relevant and reliable evidence." *Thomas v. Univ. Med. Ctr., Inc.*, ___ S.W.3d ___, No. 2018-SC-000454-DG, 2020 WL 5103681, at *7 (Ky. Aug. 20, 2020).[2]

However, on the other hand, "we do not want potential defendants to shy away from self-critical analyses and improvements for fear that the same can be used against them in a civil suit. Such self-critical analysis is a key step in improving safety conditions, procedures, and outcomes." *Id.* FNHRA was enacted by the United States Congress "[i]n an attempt to improve the quality of care afforded to nursing home residents." *Clouse*, 473 S.W.3d at 84. As discussed above, "[t]he cloak of confidentiality covering quality assurance

---

[2] As of the drafting of this Opinion, Westlaw noted *Thomas* was not yet final. It became final on September 10, 2020.

procedures and materials is designed to encourage thorough and candid peer review and thereby improve the quality of care." *In re Subpoena Duces Tecum to Jane Doe, Esq.*, 787 N.E.2d at 621 (citation and internal asterisks omitted).

After weighing the competing interests, this Court declines to adopt the Missouri Rule that the FQAP only protects a quality assurance committee's own documents such as minutes, internal working papers, or statements of conclusions. *See Boone Ret. Ctr.*, 946 S.W.2d at 743. Instead, we adopt a case-by-case approach that allows a trial court to determine how a document was generated, why it was generated, and by whom it was generated before determining if the FQAP applies to the document. We set forth some guidelines but emphasize that a case-by-case determination must be made.

First, we must make clear that a quality assurance committee cannot be used to "create" a privilege where one did not exist previously. By this we mean that a nursing home cannot "funnel" documents through its quality assurance committee in an attempt to confer privilege on otherwise unprivileged records. Documents generated outside of the committee and for purposes unrelated to the committee are not protected by the FQAP merely because the committee reviews the documents during the course of its work. *Accord In re Subpoena Duces Tecum to Jane Doe, Esq.*, 787 N.E.2d at 622. This is true even if those documents are used in creating privileged quality assurance documents. Documents kept in the facility's ordinary course of business or that are kept as a part of a patient's medical record are not privileged. If documents are

required to be generated pursuant to other legal requirements, those documents are not privileged.

However, documents created by or at the behest of a quality assurance committee for quality assurance purposes of the committee will likely be protected by the FQAP. Further, documents that otherwise would have been generated by the committee in the course of its work but were generated instead by an outside source at the behest of the committee will also likely be protected. Put simply, if a document is generated for the express purpose of aiding the committee in its work, then it will likely be privileged.

The FNHRA requires a nursing facility's quality assurance committee "to identify issues with respect to which quality assessment and assurance activities are necessary" and "develop[] and implement[] appropriate plans of action to correct identified quality deficiencies." 42 U.S.C.A. § 1396r(b)(1)(B). If documents are created for the purposes outlined in the statute at the behest of the committee, even if generated by someone who is not a member of the committee, said documents will likely be protected by the FQAP.

In this case, Redbanks's QAPI committee contracted with Wells "to evaluate the facility's quality of care and provide guidance where care can be improved." The activities performed by Wells for Redbanks are exactly the activities the QAPI committee is statutorily required to perform. Presumably, Wells has expertise in evaluating the quality of a facility's care, identifying areas of improvement, and recommending remedial measures. Under this relationship, Wells was effectively an "agent" of the QAPI committee performing

16

a function that in a larger institution would likely be kept in house. To hold otherwise would be to fail to recognize that it may not be feasible for a small nursing facility to employ, on its own staff, persons with quality assurance expertise. In such a situation, the goals of the FNHRA may be best served by contracting out these responsibilities. Further, the FQAP was created to allow a quality assurance committee to conduct its business confidentially. Contracting for assistance in performing this business does not inhibit this goal, just as an attorney contracting with an outside expert does not inhibit the confidential relationship between the attorney and his client. The reports generated by the nurse consultants employed by Wells and provided to Redbanks's QAPI committee are then used by the committee to improve care at the facility, i.e., for quality assurance purposes. As such, they are protected by the FQAP, and the Court of Appeals erred in holding otherwise.

## III. CONCLUSION

For the above reasons, we reverse the Court of Appeals' denial of Redbanks's petition for a writ of prohibition.

All sitting. All concur.

17

COUNSEL FOR APPELLANTS:

Craig Louis Johnson
James Nelson Martin, Jr.
Steptoe & Johnson, PLLC


APPELLEE, JUDGE WILSON:

Honorable Karen Lynn Wilson


COUNSEL FOR APPELLEE/REAL PARTY IN INTEREST, ROLAND E. MCGUIRE,
AS ADMINISTRATOR OF THE ESTATE OF JACQUELINE E. MCGUIRE,
DECEASED:

Lisa Erickson Circeo
Hannah Rebecca Jamison
Circeo Fannin, P.S.C.