RENDERED: SEPTEMBER 22, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0450-MR

LATRICE MARIE LESLIE-JOHNSON AND          APPELLANTS
ANTHONY ANTIOUS JOHNSON, SR.,
INDIVIDUALLY, AND AS CO-
ADMINISTATORS OF THE ESTATE OF
ANTHONY ANTIOUS JOHNSON, JR.


               ON APPEAL FROM COURT OF APPEALS
V.                       NO. 2021-CA-0131
            JEFFERSON CIRCUIT COURT NO. 17-CI-03363


HONORABLE AUDRA ECKERLE, JUDGE,          APPELLEE
JEFFERSON CIRCUIT COURT

AND

NORTON HOSPITALS, INC. D/B/A
NORTON HOSPITAL;
NORTON HEALTHCARE, INC.;
MARCELLO PIETRANTONI, M.D. AND
KENTUCKIANA PERINATOLOGY, P.S.C.     REAL PARTIES IN INTEREST


**OPINION OF THE COURT BY JUSTICE VANMETER**

**<u>AFFIRMING</u>**

Petitioners, Latrice and Anthony Johnson, Sr. (the Johnsons), filed a petition seeking a writ of prohibition in the Kentucky Court of Appeals to prohibit the enforcement of a July 30, 2020, Jefferson Circuit Court order directing the couple to provide defendants Norton Healthcare (Norton) with nine years of Facebook data. Concurrently, the Johnsons sought a writ of

mandamus directing the Jefferson Circuit Court to enter a different, and severely constrained, discovery order. Following a close review of the record and the issues, we affirm the Court of Appeals' order denying the motion for writs of prohibition and mandamus.

## I.    Background.

In 2012, Latrice Johnson gave birth to her son, Anthony, Jr., by way of an emergency c-section. Unfortunately, Anthony, Jr. suffered a severe hypoxic-ischemic brain injury, which the Johnsons allege ultimately caused his death in 2017. Shortly thereafter, the Johnsons, acting as co-administrators of their deceased son's estate, filed a medical negligence claim against the real parties in interest in Jefferson Circuit Court.

Less than a month after they filed the case against Norton, the defendants presented the Johnsons with interrogatories and requests for production of documents in July 2017. Interrogatory number 32 asked the Johnsons to identify all of the social media accounts in their possession dating from September 20, 2012 (Anthony, Jr.'s birthdate) to the present. Request for production number 14 asked the Johnsons to:

> Produce all data downloaded from your Facebook account, including but not limited to, all postings, profile information, wall posts, photos, videos, notes, information concerning events to which you have RSVP'd, messages sent and received by you and others, and comments made by you and others relating to wall posts, photos, videos, or any other content.

2

By rule, discovery responses were due within thirty days. CR[1] 33.01(2), 34.02(2). Approximately a year later, Norton's counsel followed up to request when discovery might be answered. Finally, in February 2020, the Johnsons confirmed that each parent operated a personal Facebook account; but objected that the request was overbroad, unduly burdensome, harassing, beyond the scope of proper discovery, and not reasonably calculated to lead to the discovery of admissible evidence. Norton filed a motion in May 2020 to compel the Johnsons to produce all downloadable Facebook data. The trial court entered an order compelling the Johnsons to turn over the requested Facebook data. After receiving an extension to review the data, the Johnsons filed a motion to reconsider, or alter, amend, or vacate, the order for production. The trial court denied their motion, after which the Johnsons filed an original action in the Court of Appeals seeking writs of prohibition and mandamus. The Court of Appeals denied the petition, which the Johnsons have now appealed.

## II. Standard of Review.

Writs are extraordinary remedies, which interfere with "both the orderly, even if erroneous, proceedings of a trial court and the efficient dispatch of our appellate duties[.]" *Hoskins v. Maricle*, 150 S.W.3d 1, 5 (Ky. 2004). "The decision to issue a writ is entirely within this Court's discretion" and applied with "great caution." *Thompson v. Coleman*, 544 S.W.3d 635, 637 (Ky. 2018).

---

[1] Kentucky Rules of Civil Procedure.

3

Although we have recognized two circumstances in which writs are an appropriate form of relief, the Johnsons concede only the second type of writ is at issue in this case. Consequently, the Johnsons must show that "the lower court is about to act incorrectly, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury would result." *Hoskins*, 150 S.W.3d at 6 (citation omitted). On appeal, this Court reviews the Court of Appeals' legal reasoning *de novo*, while assessing its factual findings for clear error. *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 810 (Ky. 2004).

### III.    Analysis.

Writs of the second class generally require petitioners to satisfy two elements: (1) that "no adequate remedy by appeal or otherwise" exists; and (2) that the petitioner "would suffer great and irreparable injury (if error has been committed and relief denied)." *Id.* at 808. While we always require petitioners to satisfy the first element, this Court has recognized some exceptions in "certain special cases" in which petitioners are not required to show "specific great and irreparable injury[,]" but instead that the nature of the error is one in which "a substantial miscarriage of justice will result if the lower court is proceeding erroneously, and correction of the error is necessary and appropriate in the interest of orderly judicial administration." *Wal-Mart Stores, Inc. v. Dickinson*, 29 S.W.3d 796, 801 (Ky. 2000) (quoting *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky. 1961)). With regards to orders allowing discovery, we have recognized that an adequate remedy will rarely exist "on appeal if the

4

alleged error is an order that allows discovery." *Grange*, 151 S.W.3d at 810.

Regardless, we have reserved invoking these exceptions for instances involving

the invasion of a recognized privilege "or some other important privacy interest

of the party resisting discovery." *Inverultra, S.A. v. Wilson*, 449 S.W.3d 339,

345 (Ky. 2014); *see also Richmond Health Facilities-Madison, LP v. Clouse*, 473

S.W.3d 79, 82–83 (Ky. 2015) ([O]ur application of this exception is rare,

however, limited primarily to circumstances where the action for which the writ

is sought would violate the law, e.g.[,] by breaching a tightly guarded privilege

or by contradicting the requirements of a civil rule." (internal quotation

omitted)).

We addressed a nearly identical factual circumstance in *Thompson v.*

*Coleman*, 544 S.W.3d 635 (Ky. 2018). In that case, a decedent's estate sued a

physician and others for medical negligence. 544 S.W.3d at 637. During

discovery, the defendants sought broad access to the decedent's social media

accounts dating to one year prior to her death. *Id.* at 639. The estate objected,

arguing that most of the information on her social media would be irrelevant.

*Id.* In denying a writ petition challenging the trial court order granting the

defendants' discovery request, this Court reasoned that CR 26.02[2] is to be

---

[2] CR 26.02(1) reads:

Parties may obtain discovery regarding any matter, not privileged, which
is relevant to the subject matter involved in the pending action, whether it
relates to the claim or defense of the party seeking discovery or to the claim
or defense of any other party, including the existence, description, nature,
custody, condition and location of any books, documents, or other tangible
things and the identity and location of persons having knowledge of any
discoverable matter. It is not ground for objection that the information

5

"read liberally" in order to ensure that both parties "have access to evidence or information leading to evidence, allowing a full case to be brought to trial." *Id.* Additionally, the Court noted that the trial court took several steps to safeguard the social media data, such as limiting the period sought, providing a protective order, requiring all information be treated as "strictly confidential," and listing several restrictions on how the information could be used. *Id.*

While social media is obviously a relatively new phenomenon, its inputs are reducible to documents. In essence, Norton has requested production of documents as contained in the Johnsons' social media accounts. The civil rules and our case law provide guidance as to the discovery of such documents. As previously stated, CR 26.02(1), being read liberally, tilts in favor of production. The party seeking to prevent discovery bears the burden of showing not only the nonrelevance of the material, *Morrow v. Brown, Todd & Heyburn*, 957 S.W.2d 722, 727 (Ky. 1997), but also that it is privileged. *Thompson*, 544 S.W.3d at 638; *Collins v. Braden*, 384 S.W.3d 154, 163 (Ky. 2012). As in *Thompson*, the Johnsons in this case can point to no specific privilege which the discovery order would violate, nor is the mere inclusion of irrelevant, and possibly embarrassing, information on its own enough to merit "special circumstances."[3]

---

sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

[3] This court has held that "[a] protective order is within the full discretion and authority of the trial court and is appropriate only to prevent a party from 'annoyance, embarrassment, oppression, or undue expense or burden.'" 473 S.W.3d at 83 (quoting *Ewing v. May*, 705 S.W.2d 910, 913 (Ky.1986)). In this case, the apparent ease with which the Facebook record was produced indicates no burden or expense

In *Collins*, we outlined three means by which a party could resist

discovery of privileged material:

> Parties asserting privileges have numerous ways to establish the existence of . . . privilege when an opposing party challenges its existence.
>
> One common method is an *in camera* review by the trial court of the documents in question.  This was the method employed in [*Lexington Publ. Lib v.*] *Clark*, 90 S.W.3d [53,] 63 [(Ky. 2002)].  But this method can have its limitations.  For example, it requires the trial court to "describe the documents" or "recite any factual bases" supporting its decision to facilitate appellate court review.  *Id.*  More importantly, *in camera* review can overly burden a trial court, especially in litigation where many documents are claimed to be privileged.  Thus, instead of *in camera* review, a party claiming the privilege could produce a detailed privilege log with descriptions of the documents sufficient to establish the existence of the privilege (i.e., more than their titles).  Or a party could make an "offer of proof" or proffer, like the process in KRE[4] 105(b), describing the documents (without going into the content of any statements or legal advice they contain, of course).
>
> How a party proceeds is up to it, unless the trial judge prefers one approach over the others or declines to allow the use of one in a given case.  That call falls within the trial court's sound discretion.  The only requirement is that when challenged, the party claiming the privilege must do more than merely assert the privilege.  It must provide the court with sufficient information to show the existence of the elements of the privilege and to allow review of that decision by higher courts.

384 S.W.3d at 164–65.  If a party claims that social media matter is nonrelevant, no reason exists as to why one of the processes summarized in *Collins* could not be utilized.

---

was involved.  As to annoyance or oppression, those items involve continuous, repetitive discovery tactics.  *See Britton v. Garland*, 335 S.W.2d 329 (Ky. 1960) (holding that trial court could protect litigants from such number and nature of depositions as to seriously interfere with litigant's proof and usurp time to present case).  This case involves one request for social media data.  As to embarrassment, clearly the Johnson might not want certain matters disclosed, but the trial court addressed that concern in requiring non-dissemination.

4 Kentucky Rules of Evidence.

CR 26.02(1) clearly permits discovery of "any matter, not privileged, which is relevant to the subject matter involved" and that parties cannot object simply because the information may not be admissible at trial so long as "the information sought appears reasonably calculated to lead to the discovery of admissible evidence." "Relevancy is more loosely construed upon pre-trial examination than at the trial, and the Rule requires only relevancy to the subject matter involved in the action." *Richmond Health Facilities*, 473 S.W.3d at 83 (quotation and citation omitted). Given that the Johnsons have put their mental and emotional state directly at issue in this litigation, Norton's discovery request for their social media accounts is reasonable.[5] Moreover, the Johnsons' objection that the period Norton seeks access to is overly broad is a direct result of their own failure to move the litigation along in a timely fashion. Originally, Norton only sought the Facebook data from September 20, 2012 (the deceased child's birthdate) to the present (which at the time of the original complaint was 2017). Consequently, the Johnsons' own tardiness in responding to the interrogatories and requests for production is responsible for the extended time period of data sought by Norton.[6] Finally, we note that the

---

[5] The Johnsons' pleadings explicitly recognize that information concerning their relationship with their son and emotional well-being is fair game, as is the identity of others with knowledge that may substantiate or negate plaintiffs' claims. Plaintiffs' Motion to Reconsider or Alter, October 30, 2020, p. 4.

[6] The following timeline shows that the Johnsons' counsel repeatedly failed to produce the documents, or object to them, for nearly three years.

July 5, 2017: Norton serves the interrogatories and request for production.

October 23, 2018: Norton requests the discovery answers and the Johnsons' counsel promises to "put the wheels in motion."

8

trial court ordered all Facebook data to be treated as "strictly confidential" thereby minimizing the potential to misuse or abuse any irrelevant information turned over by the Johnsons. We are constrained therefore, as we were in *Thompson,* to conclude that the Johnsons have failed to show irreparable harm and have not demonstrated that any error which may have occurred at the trial level requires the invocation of our "special circumstances" exception to writs of the second class.

## IV. Conclusion.

We find the Johnsons' series of general objections to be without merit and affirm the Court of Appeals' denial of the writ.

All sitting. All concur.

COUNSEL FOR APPELLANTS:

Paul A. Casi, II
Jeffrey Wayne Adamson
Paul A. Casi, II, P.S.C.

---

April 12, 2019: The Johnsons' counsel emails defense counsel and promises the answers "shortly."

July 23, 2019: Defense counsel reminds plaintiffs' counsel the responses are two years late and plaintiffs' counsel promises to have them "next week."

September 9, 2019: Plaintiffs' counsel promises to have the responses "finish[ed] this week."

February 21, 2020: Plaintiffs' counsel finally provides defense counsel with the answers.

APPELLEE:

Hon. Audra Eckerle


COUNSEL FOR REAL PARTIES IN INTEREST
KENTUCKIANA PERINATOLOGY, P.S.C. AND
MARCELLO PIETRANTONI, M.D.:

Christopher T. Coburn
Scott Philip Whonsetler
Whonsetler Law, PLLC


COUNSEL FOR REAL PARITES OF INTEREST
NORTON HEALTHCARE, INC. AND NORTON HOSPITALS
INC. D/B/A NORTON HOSPITAL:

Beth Hendrickson McMasters
Virginia Leigh Schell
Stoll Keenon Ogden, PLLC