RENDERED: JANUARY 15, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1142-MR

JEFFREY A. SEXTON
AND MARILYN SEXTON                                                APPELLANTS


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE ANNIE O'CONNELL, JUDGE
                    ACTION NO. 16-CI-400710


US BANK NATIONAL ASSOCIATION AS
TRUSTEE, SUCCESSOR IN INTEREST TO
BANK OF AMERICA, NATIONAL
ASSOCIATION, AS TRUSTEE, SUCCESSOR
BY MERGER TO LASALLE BANK NATIONAL
ASSOCIATION, AS TRUSTEE FOR MORGAN
STANLEY MORTGAGE LOAN TRUST 2006-8AR,
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2006-8AR; MERRILL LYNCH CREDIT
CORPORATION, FV-1 INC. IN TRUST FOR
MORGAN STANLEY MORTGAGE CAPITAL
HOLDINGS; COMMONWEALTH BANK AND
TRUST COMPANY; COMMONWEALTH OF
KENTUCKY, DEPARTMENT OF REVENUE,
DIVISION OF COLLECTION; THE UNITED
STATES OF AMERICA, DEPARTMENT OF THE
TREASURY INTERNAL REVENUE SERVICE                               APPELLEES

\*\* \*\* \*\* \*\* \*\*

BEFORE: ACREE, DIXON, AND K. THOMPSON, JUDGES.

DIXON, JUDGE: Jeffrey A. Sexton and Marilyn Sexton appeal from the order granting summary judgment in favor of US Bank National Association as trustee, successor in interest to Bank of America, National Association, as trustee, successor by merger to Lasalle Bank National Association, as trustee for Morgan Stanley Mortgage Loan Trust 2006-8AR, mortgage pass-through certificates, series 2006-8AR ("US Bank"), entered June 27, 2019, by the Jefferson Circuit Court. Following review of the record, briefs, and law, we affirm.

This is a residential foreclosure action. The Sextons executed a loan to purchase their residence via a Promissory Note ("Note") and Mortgage with Morgan Stanley Credit Corporation on April 12, 2006. On June 29, 2010, the Sextons and Morgan Stanley Mortgage Capital Holdings, LLC, entered into a Home Affordable Modification Agreement. The Sextons made their loan payments until January 2013. On November 18, 2015, Ocwen Loan Servicing, LLC, provided the Sextons Notice of Default on their loan. On March 3, 2016, the Mortgage was assigned to US Bank, and on April 14, 2016, US Bank filed the instant action to which the Sextons answered and counterclaimed. US Bank moved the trial court to dismiss the Sextons' counterclaim for failure to state a

claim upon which relief could be granted, which the court granted. US Bank later moved the trial court for summary judgment and provided an affidavit of Paul Dickinson, the contract management coordinator for US Bank's servicer, affirming that US Bank is the holder of the Note and Mortgage and that the loan is in default. Following a hearing, during which US Bank produced the original Note—indorsed in blank—and after the matter was fully briefed, the trial court granted summary judgment in favor of US Bank. This appeal followed.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[1] 56.03. An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exists and the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). A grant of summary judgment is reviewed *de novo* because factual findings are not at issue. *Pinkston v. Audubon Area Cmty. Servs., Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006).

On appeal, the Sextons contend that US Bank is not a real party in interest and, therefore, has no standing to bring this action. However, their claim is

---

[1]  Kentucky Rules of Civil Procedure.

simply not borne out by the record. CR 17.01 provides that "[e]very action shall be prosecuted in the name of the real party in interest, but . . . an assignee for the benefit of creditors . . . may bring an action[.]" "We think every one [sic] would agree that ordinarily the real party in interest is the person who is the beneficial owner of the cause of action sought to be prosecuted. Where the cause of action is assignable, and the entire cause has been assigned, clearly the assignee has become the owner of the cause and he is the real party in interest." *Louisville & N.R. Co. v. Mack Mfg. Corp.*, 269 S.W.2d 707, 709 (Ky. 1954) (citing *Works v. Winkle*, 314 Ky. 91, 234 S.W.2d 312 (1950); *United States v. Aetna Cas. & Surety Co.*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949)).

In the case herein, US Bank established that it was in possession of the Note. This Court has held, "[m]ere possession of the original note [is] sufficient" to collect on the note. *Stevenson v. Bank of Am.*, 359 S.W.3d 466, 470 (Ky. App. 2011). Further, KRS[2] 355.3-301(1) provides a "'[p]erson entitled to enforce' an instrument means . . . [t]he holder of the instrument[.]" Likewise, KRS 355.3-205(2) provides, "[w]hen indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." Here, US Bank was lawfully in possession of the original Note and

---

[2] Kentucky Revised Statutes.

-4-

Mortgage and, therefore, is a real party in interest clearly entitled to enforce the obligations secured thereby. The Sextons' argument to the contrary is without merit. Furthermore, the March 3, 2016, assignment of the Mortgage to US Bank is proof of its entitlement to enforce the obligations. Ultimately, there is more than sufficient evidence supporting the trial court's finding that US Bank is a real party in interest and has standing to bring this action. Accordingly, and in the absence of any genuine issue of material fact, the trial court properly granted summary judgment in favor of US Bank.

The Sextons further argue that the trial court erred in granting summary judgment. Yet, there was no genuine dispute as to any material fact precluding summary judgment. Moreover, the Sextons failed to demonstrate that they could prevail as a matter of law as there was absolutely no evidence that they were not in default. Nevertheless, the Sextons contend there must be a showing of opportunity for and consideration of a loan modification. However, examination of the Note itself shows only notice of the default is required for the loan to be accelerated, and notice was provided. Review of the record also demonstrates that the loan was, in fact, modified at least once. The Sextons' affidavit provided testimony that additional discussions of loan modification had occurred. Nonetheless, the Sextons' claim of entitlement to loan modification under federal law was properly dismissed by the trial court as inapplicable to the case herein, and

as previously discussed, their defense that US Bank lacked standing was wholly without merit. Thus, we must affirm.

Therefore, for the foregoing reasons, the order entered by the Jefferson Circuit Court is AFFIRMED.

ACREE, JUDGE, CONCURS.

THOMPSON, K., JUDGE, DISSENTS AND FILES SEPARATE OPINION.

THOMPSON, K., JUDGE, DISSENTING: I respectfully dissent. While Jeffrey A. Sexton's and Marilyn Sexton's appeal is primarily focused on their allegation that US Bank is not a real party in interest and, therefore, has no standing to bring this action, the caselaw is decidedly against them on that issue. However, I would generously interpret their *pro se* brief and reverse on the basis that the conduct they allege occurred from their loan servicer in the original answer as incorporated into their amended answer, and in their affidavit, should have made the trial court deny the motion for summary judgment and allow the Sextons the opportunity to bring claims against Ocwen and develop their defenses by allowing them to engage in discovery.

I quote extensively from the Sextons' answer and affidavit to demonstrate why I believe issues of fact precluded summary judgment. In their

answer, responding to portions of the complaint stating that the Sextons did not make payments, the Sextons denied these allegations, explaining:

> Regarding the allegations contained in paragraph three (3) Defendants Sexton attempted to make payments in accordance with the terms and conditions of the Note and Mortgage and the modification agreement entered into between themselves and the Plaintiffs. However, the Plaintiff, or its servicer, refused to accept payment and have contributed to the claimed default herein. . . .
>
> Regarding the allegations contained in paragraph number four (4) Defendants have attempted to make payments in accordance with the Note, Mortgage, and Modification Agreement entered into herein. That the Plaintiff, or its servicer, has failed to accept those payments and therefore has contributed to the claimed default herein. . . .
>
> Regarding the allegations contained in paragraph number five (5) Defendants Sexton have attempted to make payments in accordance with the Note, Mortgage and Modification Agreement herein and Plaintiffs have failed to accept the same. Therefore, it has contributed to the claimed default herein. . . .

On the basis of such actions, the Sextons stated that the plaintiff, its predecessor, or its servicer contributed to their default, failed to state a claim for which relief may be granted, and is estopped from going forward.

In the Sextons' affidavit in opposition to the plaintiff's motion for summary judgment, they explained what happened after they experienced some financial difficulty and entered into a loan modification:

Your affiant almost immediately requested a more meaningful loan modification. This request was directed to SLS, the servicing company for their loan. Your affiants indicated that such a loan, with an appropriate loan modification, would result in a successful loan payment and a satisfaction of their Note and Mortgage.

Despite numerous attempts and completed documents and loan modification forms, [the loan servicer] never responded to your affiants, either affirmatively or negatively regarding such loan modification. When your affiants would complete a loan modification document and provide supporting documents, and subsequently follow up with personnel at [the loan servicer] we were told that the documents were not completed properly, which was not true, or that we had not provided sufficient and current documentation, which was also not true.

We were counseled not to make payments and [the loan servicer] denied our offer to make payments. We were trying to keep any claimed arrearage as small as possible and, if at all possible, to eliminate that arrearage through voluntary payments.

Again, [the loan servicer] refused our offer.

We relied, on our detriment, on [the loan servicer] to ensure that any claims arrearage would be eliminated.

In fact, it got to the point where it seemed as if [the loan servicer] was more interested in foreclosing upon us that [sic] being of any help.

Further, [the loan servicer] never indicated to us who the holder of the Note was and, in addition to the requests to make payments, where any such payments could be sent. . . .

We attempted, in good faith, to resolve any claimed arrearage but [the loan servicer] was unwilling to do so.

It is our understanding that Ocwen may be the current loan servicer or may have been the servicer the entire time. We never heard from Ocwen with regard to any loan servicing or loan modification herein.

Because of this, we deny the amount of money claimed to be due and owing that has been set forth herein.

The Sextons entered into the loan modification in June 2010.

According to the transaction history that US Bank provided and the affidavit in support of summary judgment from Dickinson, the contract management coordinator for Ocwen Loan Servicing, the servicer for US Bank, the last payment Ocwen received was applied to the Sextons' January 1, 2013 payment.

What the Sextons are likely unaware of is that conduct like that they complained about is part and parcel of suit by the Consumer Financial Protection Bureau, forty-nine states, and the District of Columbia filed on December 19, 2013, in the United States District Court for the District of Columbia in case number 13-cv-2025, against Ocwen Financial Corporation and Ocwen Loan Servicing, LLC, alleging that Ocwen violated, among other laws, the Unfair and Deceptive Acts and Practices laws of the plaintiff states and the Consumer Protection Act of 2010.[3] That complaint is available to view here:

---

[3] The consent decree and additional information about it can be accessed here: https://www.consumerfinance.gov/about-us/newsroom/cfpb-state-authorities-order-ocwen-to-provide-2-billion-in-relief-to-homeowners-for-servicing-wrongs/ (last accessed December 10, 2020).

https://files.consumerfinance.gov/f/201312_cfpb_complaint_ocwen.pdf (last

accessed December 10, 2020). In paragraph twenty on pages 12-13 of that

complaint, the plaintiffs alleged:

> In the course of their mortgage servicing activities, the Servicers [Ocwen] have engaged in the following acts and practices:
>
> a. failing to timely and accurately apply payments made by borrowers and failing to maintain accurate account statements;
>
> b. charging unauthorized fees for default-related services;
>
> c. imposing force-placed insurance when the Servicers knew or should have known that borrowers already had adequate coverage;
>
> d. providing false or misleading information in response to borrower complaints;
>
> e. providing false or misleading information to borrowers regarding loans that have been transferred from other servicers;
>
> f. failing to provide accurate and timely information to borrowers who seek information about loss mitigation services, including loan modifications;
>
> g. falsely advising borrowers that they must be at least 60 days delinquent in loan payments to qualify for a loan modification;
>
> h. misrepresenting to borrowers that loss mitigation programs would provide relief from the initiation of foreclosure or further foreclosure efforts;

-10-

i.  providing false or misleading information to consumers about the status of the loss mitigation review, including while referring loans to foreclosure;

j.  providing false or misleading information to consumers about the status of foreclosure proceedings where the borrower was in good-faith actively pursuing a loss mitigation alternative offered by the servicers;

k.  failing to properly calculate borrowers' eligibility for loan modification programs and improperly denying loan modification relief to eligible borrowers;

l.  failing to properly process borrowers' applications for loan modifications, including failing to account for documents submitted by borrowers and failing to respond to borrowers' reasonable requests for information and assistance, and as a result, denying loan modifications to consumers who were eligible;

m.  providing false or misleading reasons for denial of loan modifications;

n.  with respect to transferred loans, failing to honor in-process trial modifications agreed to by prior servicers;

o.  with respect to transferred loans with in-process trial and permanent modifications, deceptively seeking to collect payments from the consumer under the mortgage's original unmodified terms;

p.  preparing, executing, notarizing, and presenting false and misleading documents, filing false and misleading documents with courts and government agencies, or otherwise using false or misleading documents as part of the foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments); and

q. preparing, executing, notarizing, and filing affidavits in foreclosure proceedings, whose affiants lacked personal knowledge of the assertions in the affidavits and did not review any information or documentation to verify the assertions in such affidavits. This practice of repeated false attestation of information in affidavits is popularly known as "robosigning."

That lawsuit resulted in a consent judgment whereby Ocwen did not admit liability but agreed to pay $127.3 million within ten days which the member states would use "to provide cash payments to borrowers whose homes were sold in a foreclosure sale between and including January 1, 2009, and December 31, 2012, and who otherwise meet criteria set" and agreed to "provide $2 billion of relief to consumers who meet the eligibility criteria . . . to remediate harms allegedly caused by the alleged unlawful conduct of Defendant."  Consent Judgment, https://files.consumerfinance.gov/f/201403_cfpb_entered-judgment-with-exhibits_ocwen.pdf (last accessed December 10, 2020) (quoting IV. 4-5). The consent judgment remained in effect for three years.  It did not bind individual mortgage loan borrowers.

The alleged conduct of Ocwen in the Consumer Financial Protection Bureau complaint bears a remarkable similarity to the conduct of which the Sextons complain.  While the Sextons acknowledge that SLS was not their loan servicer, it appears that Ocwen may have been using a front to shield itself from liability or to confuse them and that the timeline in which they allege they had

trouble receiving a loan modification was during the time that Ocwen was servicing their loan. It is unconscionable to allow foreclosure and sale of the Sextons' home by US Bank if such conduct took place. While the Sextons could have been clearer in their affidavit with dates and specifics about how they tried to offer payment, summary judgment should not have been granted while such factual issues remained.

I note that there is no allegation that US Bank, who was assigned the mortgage from Ocwen, committed any wrongdoing towards the Sextons. However, Ocwen's assignment does not allow it to assign away any fraud or prohibit the Sextons from making appropriate defenses made based upon its conduct.

Accordingly, I dissent.

BRIEFS FOR APPELLANT:

Jeffrey A. Sexton
Louisville, Kentucky

BRIEF FOR APPELLEE US BANK NATIONAL ASSOCIATION AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY MORTGAGE LOAN TRUST 2006-8AR, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-8AR; MERRILL LYNCH CREDIT CORPORATION, FV-1 INC. IN TRUST FOR MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS:

John R. Wirthlin
William L. Purtell
Cincinnati, Ohio